[No. H025074. Sixth Dist. Mar. 25, 2004.]

FIORAVANTE INTRIERI et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
OCADIAN CARE CENTERS, INC., Real Party in Interest.

**COUNSEL**

Chapman & Intrieri, Kurt Thomas Hendershott; Needham, Davis, Kirwan & Young and Craig Needham for Petitioner.

No appearance for Respondent.

Bjork Lawrence, Robert K. Lawrence; Horvitz & Levy and Barry R. Levy for Real Party in Interest.

**OPINION**

**RUSHING, P. J.—**

### INTRODUCTION

This original proceeding arises from the elder abuse action filed by petitioners Fioravante and Peter Intrieri, the husband and son of Amalia Intrieri, after Mrs. Intrieri died following her admission to the Alzheimer's unit of a nursing home owned and operated by Guardian Postacute Services, Inc.[1] In their petition for writ of mandate, petitioners challenge the trial court's order granting Guardian's motion for summary adjudication of the

---

[1] During the course of this litigation, Guardian Postacute Services, Inc., changed its name to Ocadian Care Centers, Inc. For ease of reference, we will refer to real party in interest Ocadian Care Centers, Inc., as Guardian.

causes of action for elder abuse, negligent infliction of emotional distress, fraud, negligent misrepresentation, unfair business practices, and false advertising. We granted writ review only as to the causes of action for elder abuse, negligent misrepresentation, and fraud. Because we agree with petitioners that triable questions of fact exist, we will issue a peremptory writ of mandate directing respondent court to vacate its summary adjudication order as to these three causes of action.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *The Fourth Amended Complaint*

Petitioners allege in their fourth amended complaint that Guardian caused Mrs. Intrieri's death as the result of events that occurred while she was a patient at Guardian's nursing home in San Jose. Another patient, Janet Lawry, is also named as a defendant.[2] According to petitioners, Mrs. Intrieri, age 88, was injured during an unprovoked altercation with Lawry after Lawry, who was not an Alzheimer's patient, entered the Alzheimer's unit where Mrs. Intrieri resided.

Petitioners allege that Lawry gained access to the Alzheimer's unit through secured doors and became engaged in a loud, prolonged disturbance with Alzheimer's patients. Although at least two Guardian nurses were present, no Guardian personnel intervened. Mrs. Intrieri came out of her room when she realized a disturbance was occurring. At that point, Lawry shouted at Mrs. Intrieri to "Get back in your room," or words to that effect. Lawry then shoved Mrs. Intrieri backwards, causing her to fall and break her hip.

Guardian allegedly delayed appropriate treatment due to its failure to immediately diagnose Mrs. Intrieri's hip fracture. According to petitioners, after Mrs. Intrieri's fall Guardian staff put her back in bed and did not perform a complete medical assessment until the next morning. Eventually, Mrs. Intrieri underwent hip surgery and subsequent amputations of an infected foot and leg. She also developed severe pressure sores during her admission to Guardian's nursing home, and family members observed unexplained bruises on her face and body. Mrs. Intrieri died two months after the fall.

Based on these allegations, the complaint states 10 causes of action. Our writ review focuses upon the causes of action for willful misconduct/elder abuse, fraud, and negligent misrepresentation. The first cause of action is captioned as willful misconduct and alleges that Guardian violated Welfare and

---

[2] Lawry is not a party to this writ proceeding.

Institutions Code section 15610.57[3] by neglecting Mrs. Intrieri. The alleged neglect includes failing to provide appropriate supervision of non-Alzheimer's patients and allowing them to enter the Alzheimer's unit and interact with vulnerable Alzheimer's patients; failing to provide proper and necessary nursing care and services to maintain Mrs. Intrieri's well being; failing to initially assess and treat her fractured hip; failing to prevent and properly treat Mrs. Intrieri's pressure sores; and the development of repeated and unexplained bruising on her face and body. Further, petitioners allege that Guardian's neglect was "intentional and in reckless disregard for the probability that severe injury would result from their failure to carefully adhere to their duties." In their prayer, petitioners request attorney fees and compensatory damages pursuant to the enhanced remedies of section 15657, subdivisions (a) and (b).

In the seventh cause of action for fraud, petitioners allege that Guardian's admissions director intentionally made false representations to petitioner Peter Intrieri to induce him to place his mother in Guardian's facility. Specifically, the admissions director told him "a. That the Alzheimer's Ward of the facility was a secure facility for the residents, which would include Mrs. Intrieri; [¶] b. That the door to the facility had a key-punch pad access on both sides, also for the security of the residents, which would include Mrs. Intrieri; [¶] c. That a code would have to be entered into the key-punch pad access in order to enter and exit the Alzheimer's Ward; [¶] d. That only persons authorized by Guardian would be provided with the key-punch pad access code." Peter Intrieri asserts that he would not have placed Mrs. Intrieri in Guardian's nursing home but for his reliance upon these misrepresentations concerning safety and security, which he believed to be true. The eighth cause of action for negligent misrepresentation is based upon the same factual allegations as the cause of action for fraud, and further alleges that Guardian had no reasonable grounds for believing the representations to be true.

## II. *Guardian's Motion for Summary Adjudication*

Guardian moved for summary adjudication of each cause of action except the second cause of action for negligence. As to the first cause of action for willful misconduct, Guardian argued that this cause of action lacked merit as a matter of law, for several reasons. First, it was undisputed that the two nurses who were present at the time of the altercation between Lawry and Mrs. Intrieri responded as quickly as possible. Second, petitioners had no evidence to show that those two nurses had actual or constructive notice that Lawry was violent or that she had committed previous physical assaults on

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

other patients. Third, there was no evidence to show that Guardian intentionally or recklessly neglected Mrs. Intrieri's medical needs or caused her bruising, and Guardian's medical experts stated in their declarations that Guardian met the standard of care with respect to Mrs. Intrieri.

Regarding the seventh and eighth causes of action for fraud and negligent misrepresentation, Guardian contended that the claims had no merit as a matter of law because Guardian owed no duty to petitioner Peter Intrieri since he was not a Guardian patient. Alternatively, while Guardian admitted that its admissions officer had made the statements about the safety and security of the Alzheimer's unit alleged in the complaint, Guardian maintained that these statements were not actionable because they were not false or fraudulent.

Instead, Guardian argued, its admissions officer had truthfully represented the Alzheimer's unit as secure, because it was undisputed that Guardian's security system allowed "unfettered access" to the Alzheimer's unity by authorized persons, who, according to Guardian, included staff, non-Alzheimer's patients, and family members. At the same time, the security system prevented Alzheimer's patients from leaving the unit without supervision because an alarm would sound unless a code, which was posted above the keypad, was entered into the keypad code system for the Alzheimer's unit door. Therefore, Guardian argued, the evidence showed that it was undisputed that the Alzheimer's unit was a secure environment that did not violate the right of unit residents to be free of physical restraints, such as locked doors.

## III. *Petitioners' Opposition to the Motion for Summary Adjudication*

Petitioners opposed Guardian's motion for summary adjudication on the ground that petitioners' evidence demonstrated that a triable question of fact existed as to each cause of action. As to the cause of action for willful misconduct, petitioners stated that the cause of action had been mislabeled. Petitioners meant to assert an elder abuse cause of action seeking the enhanced remedies available under the Elder Abuse and Dependent Adult Civil Protection Act, section 15657, which required only a showing that Guardian had physically abused or neglected Mrs. Intrieri while she was in Guardian's care and that Guardian had acted recklessly in doing so.

In support of the elder abuse cause of action, petitioners submitted the declarations of their medical experts, Roberta Block, R.N., and Kathryn Locatell, M.D., both specialists in nursing home care. The medical expert's opinions were based in part on Lawry's medical records, which revealed that two weeks before her altercation with Mrs. Intrieri, Lawry had been observed by Guardian staff to be confused and hostile, and had been heard to shout, "I

want to go home. I will kill someone to get home." Dr. Locatell stated in her declaration that these medical records also showed that Guardian knew prior to Lawry's assault on Mrs. Intrieri that Lawry had become unstable and that she was not an appropriate resident for the facility because of her level of functioning and wandering behavior. Additionally, Dr. Locatell opined that when Lawry entered the Alzheimer's unit and displayed signs of agitated behavior that posed a risk of harm to the Alzheimer's patients, Guardian staff should have immediately removed her from the unit and prevented the altercation that resulted in Mrs. Intrieri's hip fracture. Dr. Locatell further concluded that Guardian acted with conscious disregard that Mrs. Intrieri would sustain further injury when Guardian failed to provide care planning, skin care reporting and proper treatment of her skin ulcers.

Similarly, Block stated in her declaration that Lawry's medical records revealed that Lawry had been upset, depressed, confused, disoriented and hostile in the weeks leading up to the altercation with Mrs. Intrieri, and therefore it was below the nursing standard of care to allow Lawry to enter the Alzheimer's unit because there was a high probability that Lawry would cause injury to the unit's residents. Further, Block stated that the medical records pertaining to the altercation showed that the nurses on duty actually heard Lawry screaming at the residents of the Alzheimer's unit, yet they failed to respond immediately and remained seated at the nurses' station until Mrs. Intrieri fell. Block also criticized Guardian's nursing care, opining that Guardian's failure to properly treat Mrs. Intrieri's skin ulcers fell far below the nursing standard of care and was done with a conscious disregard of the high probability that her condition would worsen. On the basis of these expert declarations, petitioners argued that they had sufficient evidence to show that Guardian had committed elder abuse within the meaning of section 15657.

With respect to the seventh and eighth causes of action for fraud and negligent misrepresentation, petitioners asserted, first, that Guardian's statements to Peter Intrieri were actionable although he was not a patient at Guardian's nursing home. Petitioners pointed out that the existence of a duty is not an element of a cause of action for fraud. Nor was patient status required for the negligent misrepresentation cause of action, because Guardian made the statements directly to Peter Intrieri as part of a business transaction, i.e., to induce him, as Mrs. Intrieri's caregiver, to place Mrs. Intrieri in a Guardian facility.

Second, petitioners argued that Guardian had failed to establish that the statements made by Guardian's admissions director to Peter Intrieri regarding the safety and security of the Alzheimer's unit were true as a matter of law. Peter Intrieri testified in his deposition that he was told that only authorized persons would be able to enter the Alzheimer's unit, that non-Alzheimer's

patients were not supposed to enter the unit, and that the Guardian facility would be "very good" for his mother. To the contrary, petitioners asserted, the evidence showed that no authorization was required, because the keypad code for access to the Alzheimer's unit was displayed above the keypad system for the unit door, and that the care his mother received fell below the standard of care. Further, petitioners argued that the admissions director knew or should have known that her statements were false because the evidence showed that the nursing care was substandard; Guardian staff were aware that Lawry, a patient with reported instances of hostility, was allowed unlimited access to the Alzheimer's unit; and that anyone who could read the keypad code could enter the Alzheimer's unit.

## IV. *The Trial Court's Order*

The trial court granted in part and denied in part Guardian's motion for summary adjudication. The court granted summary adjudication of the causes of action for willful misconduct/elder abuse, negligent infliction of emotional distress, fraud, negligent misrepresentation, unfair business practices, and false advertising. Regarding the willful misconduct cause of action, the trial court determined that the evidence was insufficient to create a triable question of fact, because there was "no evidence establishing that the staff at Guardian intentionally acted with a positive, active disregard for decedent's physical condition or safety, or with an absolute knowledge that substantial serious injury would probably result from any errors or omission in attending to her care or treatment. The court finds that, at best, that evidence suggests that defendant's care of decedent may have fallen below the standard of care; however, that is insufficient to constitute willful misconduct."

As to petitioners' statement that the first cause of action was actually a cause of action for elder abuse mislabeled willful misconduct, the trial court also determined that the evidence was insufficient to create a triable question of fact. "[T]he court finds that [the] evidence, at best, indicates that [Guardian] may have been negligent in failing to protect decedent from being pushed by patient Janet Lawry, failing to promptly obtain proper treatment for decedent's resulting fractured hip, and/or in failing to properly care for decedent's subsequent pressure sores. However, the court finds that the evidence is insufficient to establish that defendant acted with a deliberate disregard of a high probability that decedent would be injured by Lawry or that the course of treatment for decedent's pressure sores would not be successful. The court specifically finds that evidence is insufficient to support a claim under the Elder Abuse Act because there is no evidence showing either that Lawry attacked or threatened anyone prior to the incident involving decedent or that [Guardian] intentionally ignored decedent's pressure sores or intentionally withheld treatment. [¶] In short, the court finds that the

evidence is insufficient to establish that defendant acted with recklessness, oppression, fraud or malice in providing care and treatment to decedent. Therefore, [petitioners] have failed to show a triable issue of fact as to their elder abuse claim."

As to the causes of action for fraud and negligent misrepresentation, the trial court again determined that the evidence was insufficient to create a triable question of fact. The trial court reasoned, "Undisputed evidence establishes that the Alzheimer's unit was 'secure' where alarmed from the inside and where only 'authorized' persons, including non-Alzheimer's patients, were permitted to enter. Therefore, [the admission director's] statements did not constitute untrue statements of material fact and cannot constitute actionable misrepresentations. Furthermore, the court finds that [the admission director's] additional alleged misrepresentations to Peter Intrieri that Guardian would be 'very good' for his parents constitutes a non-actionable statement of opinion of prediction of future events." The trial court also determined that there was no evidence to show that the admissions director knew or should have known that the alleged statements were false at the time she made them.

## DISCUSSION

### I. *Availability of Writ Relief and the Standard of Review*

An order granting a motion for summary adjudication may be reviewed by way of a petition for a writ of mandate. (Code Civ. Proc., 437c, subd. (m)(1); *Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1056 [134 Cal.Rptr.2d 358].) Since a motion for summary judgment or adjudication "involves pure matters of law," we review a ruling on the motion under the de novo standard of review. (*Addy v. Bliss & Glennon* (1996) 44 Cal. App.4th 205, 214 [51 Cal.Rptr.2d 642].) However, "[i]n ruling on the motion the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom ([Code Civ. Proc.,] § 437c, subd. (c)), and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The trial court's stated reasons for granting summary adjudication are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

When a cause of action lacks merit as a matter of law, summary adjudication is proper. (Code Civ. Proc., § 437c, subd. (f)(1).) A defendant making the motion for summary adjudication has the initial burden of showing that the cause of action lacks merit because one or more elements of

the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*)(1) & (2); *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers establish a prima facie showing that justifies a judgment in the defendant's favor, the burden then shifts to the plaintiff to make a prima facie showing of the existence of a triable material factual issue. In meeting this obligation, the plaintiff may not rely on the mere allegations of its pleadings, but must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849, quoting former Code Civ. Proc., § 437c, subd. (*o*)(2).) "There is a triable issue of fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar* at p. 850, fn. omitted.)

In the present case, we determine for the reasons discussed below that a triable question of fact exists as to the causes of action for elder abuse, fraud, and negligent misrepresentation.

## II. *Triable Questions of Fact Preclude Summary Adjudication of the Elder Abuse Cause of Action*

█ The elements of a cause of action under the Elder Abuse Act are statutory, and reflect the Legislature's intent to provide enhanced remedies to encourage private, civil enforcement of laws against elder abuse and neglect. (See *Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*).) One of the remedial purposes of the Elder Abuse Act is to protect elder or dependent adults who are residents of nursing homes. (*Id.* at p. 40.) Therefore, "[w]here it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, neglect as defined in Section 15610.57, or financial abuse as defined in Section 15610.30, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, in addition to all other remedies otherwise provided by law: [¶] (a) The court shall award to the plaintiff reasonable attorney's fees and costs." (§ 15657; *Marron v. Superior Court, supra,* 108 Cal.App.4th at p. 1058, 134 Cal.Rptr.2d 358.) █ Further, in a wrongful death action involving abuse or neglect of an elderly or dependent adult, damages for pain and suffering may be awarded. (§ 15657, subd. (b); *Community Care and Rehabilitation Center v. Superior Court* (2000) 79 Cal.App.4th 787, 792 [94 Cal.Rptr.2d 343].)

"There is, therefore, a considerable incentive for bringing a personal injury or wrongful death action in terms which qualify it under the Elder Abuse

Act." (*Community Care and Rehabilitation Center v. Superior Court, supra,* 79 Cal.App.4th at p. 792.) However, to obtain enhanced remedies under the Elder Abuse Act, "a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more than mere negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct." (*Delaney, supra,* 20 Cal.4th at p. 31.) " 'Recklessness' " is defined as a " 'subjective state of culpability greater than mere negligence,' " involving a " 'deliberate disregard' " of the " 'high degree of probability' " that an injury will occur. (*Ibid.*) Reckless conduct "rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.' [Citation.]" (*Id.* at pp. 31–32, fn. omitted.)

Thus, at a minimum, a showing of reckless neglect within the meaning of section 15657 is required to obtain the enhanced remedies of the Elder Abuse Act. The statutory definition of neglect is set forth at section 15610.57, which states, in pertinent part, that " 'Neglect' " is the "negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." (§ 15610.57, subd. (a)(1).) The statute expressly provides that neglect includes, among other things, "[f]ailure to provide medical care for physical and mental health needs" and "[f]ailure to protect from health and safety hazards." (§ 15610.57, subd. (b)(2)&(3).) Accordingly, our Supreme Court determined that the plaintiffs in a nursing home case had proven reckless neglect where substantial evidence showed that the defendants had failed over an extended period of time to attend to the bedsores of an elderly nursing home resident, despite their knowledge of the resident's deteriorating condition and her daughter's repeated efforts to intervene on her mother's behalf. (*Delaney, supra,* 20 Cal.4th at p. 41.)

In the case before us, Guardian argues that the undisputed facts show that the elder abuse cause of action lacks merit as a matter of law because petitioners do not have any clear and convincing evidence to establish the element of reckless, oppressive, fraudulent or malicious conduct. In Guardian's view, neither the evidence regarding the operation of the keypad access system for the door to the Alzheimer's unit, the evidence regarding Lawry's entry into the Alzheimer's unit and her altercation with Mrs. Intrieri, nor the evidence showing Mrs. Intrieri's development of severe pressure sores during her Guardian admission, demonstrate anything more than mere negligence on Guardian's part. Guardian also objects to the declarations of petitioners' medical experts Block and Dr. Locatell on the ground that their statements that Guardian acted with conscious disregard of Mrs. Intrieri's safety constitute inadmissible opinion about a party's state of mind.

While we agree that the experts' conclusions regarding Guardian's state of mind cannot be considered in determining whether a triable question of fact

exists, because conclusions of fact or law do not constitute evidentiary facts (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 639 [222 Cal.Rptr. 293]), we disagree with Guardian's position that petitioners lacked sufficient evidence to create a triable question of material fact as to the reckless conduct element of the elder abuse cause of action. With regard to the keypad access system for the Alzheimer's unit, Guardian admitted, "The purpose of the key-pad code system was to allow access into the unit by family members, non-Alzheimer's patients, and staff members, but, at the same time, to provide a notification system to staff members if the Alzheimer's patient left the unit unsupervised." Moreover, Guardian admitted, "The code number was readily displayed on a written notice posted above the key-pad to provide family members, visitors, non-Alzheimer's patients, and staff members with access to and from the unit."

■ We are required to view this evidence about the operation of the keypad access system to the Alzheimer's unit and the inferences reasonably drawn from it in the light most favorable to petitioners. (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.) Applying this standard, we find a reasonable inference of a conscious disregard of the safety of the Alzheimer's patients, including Mrs. Intrieri, by virtue of the evidence showing (in Guardian's words) that Guardian provided "unfettered access" to the vulnerable residents of the Alzheimer's unit to anyone who could read the code posted over the keypad.

We also draw a reasonable inference that Guardian consciously disregarded the safety of Mrs. Intrieri and other residents of the Alzheimer's unit from the evidence showing that Lawry, a non-Alzheimer's patient, was allowed to enter the Alzheimer's unit and engage in a verbal altercation with the Alzheimer's patients without any intervention by Guardian personnel. We note that Guardian is careful to state in its separate statement of facts that the two Guardian nurses present in the Alzheimer's unit at the time of the altercation had "no reason to believe that [Lawry] would strike or push any other residents."

However, when Block and Dr. Locatell reviewed Lawry's medical records, they discovered that other Guardian personnel had noted that Lawry appeared upset, depressed, disoriented, and hostile in the weeks leading up to the altercation. Lawry's medical records also revealed that 12 days before the altercation occurred, Lawry was observed to yell, "I want to go home. I will kill someone to get home," and to bang her hands and fists on the counter. One of the Guardian nurses present at the time of the altercation testified in her deposition that on the day the altercation occurred, Lawry was found shouting at an Alzheimer's patient through the doors to the Alzheimer's unit and was taken for a cigarette to "calm her down."

Despite these incidents and the observations of Guardian personnel concerning Lawry's confused and hostile mental state, petitioners' evidence shows that Lawry was allowed to enter the Alzheimer's unit at will and to verbally attack the Alzheimer's patients without any intervention by Guardian personnel, for a period of time long enough for Mrs. Intrieri and other patients to respond by leaving their beds and entering the hallway. At that point, the medical records note that Lawry pushed Mrs. Intrieri and told her to get back in her room. As a result, Mrs. Intrieri fell and broke her hip. These evidentiary facts are sufficient to create a triable question of fact as to whether Guardian's conduct in allowing Lawry to freely enter the Alzheimer's unit and engage the Alzheimer's patients, despite Guardian's knowledge of her confused and hostile mental state, constituted reckless neglect because Guardian consciously disregarded the safety of Mrs. Intrieri and the other vulnerable Alzheimer's patients.

Finally, we find that petitioners' evidence was sufficient to create a triable question of fact as to whether Guardian's conduct with respect to Mrs. Intrieri's pressure sores constituted a reckless failure to provide medical care for her physical health needs. Petitioners' evidence showed that Peter Intrieri observed pressure sores developing on Mrs. Intrieri after her readmission to Guardian following her hip surgery, that he complained to the physician assigned by Guardian to care for Mrs. Intrieri, and that nothing was done for her. A month later, the pressure sores had grown much worse, but Guardian made no changes to Mrs. Intrieri's care plan and Peter Intrieri hired an outside physician who developed a new care plan. When Guardian staff failed to follow the new care plan, Peter Intrieri confronted the staff but again, nothing was done. Mrs. Intrieri developed infected pressure sores on her right foot that eventually led to amputation of her right toe and then her right leg below the knee. It may be reasonably inferred from this chain of events that Guardian acted with reckless neglect in caring for Mrs. Intrieri.

Accordingly, we conclude that triable questions of fact exist as to the reckless neglect element of the cause of action for elder abuse, and therefore summary adjudication should not have been granted.

III. *Triable Questions of Fact Preclude Summary Adjudication of the Fraud and Negligent Misrepresentation Causes of Action*

 The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar. Pursuant to Civil Code section 1710,[4] both torts are defined as deceit. However, the state of mind requirements are different. "Fraud is an intentional tort, the elements of which are

---

[4] Civil Code section 1710 provides, in pertinent part, "A deceit, . . . , is either: [¶] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [¶] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for

(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Cicone v. URS Corp.* (1986) 183 Cal.App.3d 194, 200 [227 Cal.Rptr. 887].) Negligent misrepresentation lacks the element of intent to deceive. Therefore, " '[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' [Citation.]" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408 [11 Cal.Rptr.2d 51, 834 P.2d 745], quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720, p. 819.)

In the case at bar, we note at the outset that Guardian has not asserted the argument it made below that the causes of action for fraud and negligent misrepresentation lack merit because as a matter of law Guardian owed no duty to Peter Intrieri since he was not a patient. This omission was prudent in light of the well-established principle that "[a]lthough a duty to disclose a material fact normally arises only where there exists a confidential relation between the parties or other special circumstances require disclosure, where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.] One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. [Citations.]" (*Cicone v. URS Corp.*, *supra*, 183 Cal.App.3d at p. 201.)

On writ review, Guardian emphasizes its alternate position that the causes of action for fraud and negligent misrepresentation lack merit as a matter of law because it cannot be disputed that the statements made by Guardian's admissions director to Peter Intrieri in connection with his decision to place his mother in Guardian's facility were true. According to Guardian, petitioners were truthfully told that a key code was necessary to enter the Alzheimer's unit; that the Alzheimer's patients were protected from wandering off; and that only people who needed to go into the Alzheimer's unit, such as family members, doctors and nurses, and other patients, would be permitted to enter. Petitioners argue to the contrary that a triable question of fact exists as to the falsity of the statements representing the Alzheimer's unit as secure.

We agree with petitioners that a triable question of fact exists as to the causes of action for fraud and negligent misrepresentation. According to the allegations of the fourth amended complaint, the admissions director made the following statements to Peter Intrieri: "a. That the Alzheimer's Ward of

---

believing it to be true; [¶] 3. The suppression of fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; . . ."

the facility was a secure facility for the residents, which would include Mrs. Intrieri; [¶] b. That the door to the facility had a key-punch pad access on both sides, also for the security of the residents, which would include Mrs. Intrieri; [¶] c. That a code would have to be entered into the key-punch pad access in order to enter and exit the Alzheimer's Ward; [¶] d. That only persons authorized by Guardian would be provided with the key-punch pad access code."

■ Guardian essentially admits that these statements were made to Peter Intrieri by the admissions director. Whether these statements were false is a triable question of material fact, because the admissions director's statements that the Alzheimer's unit was "secure" and accessible only by "authorized persons" are arguably false and misleading in light of the evidence showing that anyone who could read the keypad access code posted over the keypad could enter the unit, including potentially hostile and violent non-Alzheimer's patients. Similarly, a triable question of fact exists as to whether the admissions director knew the statements were false or lacked reasonable ground for believing the statements were true, because it is questionable whether a reasonable person would believe the statement that Guardian only allowed "authorized" persons to enter the Alzheimer's unit was true when, in practice, Guardian allowed anyone who could read the posted keypad code to enter the Alzheimer's unit.

For these reasons, we conclude that triable questions of fact exist as to the causes of action for fraud and negligent misrepresentation and the trial court erred in granting summary adjudication.

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting the motion for summary adjudication of the first cause of action for willful misconduct/elder abuse, the seventh cause of action for fraud, and the eighth cause of action for negligent misrepresentation, and to enter a new order denying the motion as to those three causes of action. Upon finality of this decision, the temporary stay order is vacated. Petitioners shall recover their costs in this writ proceeding.

Premo, J., and Elia, J., concurred.