Filed 10/13/15  Oblas v. Robertson CA2/7
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JEFFREY L. OBLAS, Individually and as Trustee, etc., et al., <br><br>        Cross-complainants and Appellants, <br><br> v. <br><br> WILLIAM ROBERTSON, <br><br>        Cross-defendant and Respondent. | B253536 <br><br> (Los Angeles County <br> Super. Ct. No. LC081015) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Jr., Judge.  Reversed with directions.

        Bergman Law Group and Daniel A. Bergman for Cross-complainants and Appellants.

        Schaffer, Lax, McNaughton and Chen and Russell A. Franklin for Cross-defendant and Respondent.

_____

**INTRODUCTION**

Jeffrey L. Oblas and Heidi Adams, individually and as trustees of the Cabo Investment Trust, appeal from a judgment in favor of William Robertson after the trial court granted Robertson's motion for summary judgment on their cross-complaint against him. Oblas and Adams argue that the trial court erred by failing to state its reasons for granting the motion for summary judgment, and that triable issues of material fact regarding their fraud and negligent misrepresentation causes of action preclude summary judgment. They also challenge the trial court's denials of their motion for leave to file a sixth amended cross-complaint and their motion for reconsideration of that ruling. We reverse the judgment because there were triable issues of material fact on the fraud and negligent misrepresentation claims. We also conclude that the trial court properly denied the motion for leave to file an amended cross-complaint and the motion for reconsideration.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Design and Installation of the Landscaping and Pool*

In May 2004 Oblas and Adams entered into a written agreement to purchase a lot and build a home in a planned-development community known as The Oaks of Calabasas. The developer was New Millennium Homes, LLC.

On August 3, 2004 Louis J. Malone, chief executive officer of New Millennium, wrote a letter to Oblas and Adams stating that New Millennium had entered into an association with Harper Pools & Landscapes that would allow purchasers of homes in the community to start landscaping their properties and installing pools before the close of escrow. Malone stated that Harper Pools had a fine reputation for 27 years and that Billy Harper had already completed or was in the process of designing more than 40 projects within The Oaks of Calabasas. Malone stated that, by selecting Harper Pools as their landscape contractor, Oblas and Adams could "significantly reduce the time after the

2

close of escrow for your total project completion," and that they could begin the installation before the close of escrow only if they hired Harper Pools.

On October 8, 2004 Billy Harper, whose true name is William Roberston and who was president of Harper Pools, wrote a letter to Oblas and Adams referring to Malone's August 3, 2004 letter and representing that Harper Pools had more than 27 years of experience. Harper stated that by hiring Harper Pools homebuyers could commence the design review process before the close of escrow and that New Millennium would assist Harper Pools "in expediting your construction approvals." Harper stated that, after obtaining those approvals, Harper Pools could begin the hardscape installation while the home was still under construction, which would allow purchasers to complete their landscaping and pool installation months earlier than they otherwise would be able to do.

Oblas and Adams hired Harper Pools in October 2004 to design the landscaping and pool for their lot, and on February 8, 2005 signed a contract for installation. Robertson signed the contract on behalf of Harper Pools. Harper Pools substantially completed the work, and the City of Calabasas gave final approval of the construction. On August 3, 2006, however, The Oaks of Calabasas Homeowners Association refused to give final approval of the construction.

B. *The Complaint and Cross-complaint*

On April 4, 2008 the Homeowners Association filed a complaint against Oblas and Adams alleging that the construction of landscaping and hardscape on their lot deviated from the plans and specifications approved by the Homeowners Association and included excavation of a slope on common area property. The Homeowners Association alleged causes of action for breach of covenants, nuisance, injunctive relief, and trespass.

On May 15, 2008 Oblas and Adams filed a cross-complaint against the Homeowners Association, New Millennium, Harper Pools, and Wells Fargo Bank, N.A. They alleged causes of action for breach of the construction contract with Harper Pools, fraud, negligent misrepresentation, conspiracy, slander of title, promissory and equitable estoppel, and injunctive relief.

3

After a series of demurrers, amended cross-complaints, and an appeal,[1] Oblas and Adams filed a fifth amended cross-complaint on April 16, 2013 alleging the same seven causes of action against the Homeowners Association, New Millennium, and Harper Pools.[2] Oblas and Adams alleged that Harper Pools had failed to complete the work properly. They also alleged that New Millennium and the Homeowners Association had entered into an agreement on August 2, 2004 making Harper Pools the preferred contractor for the installation of landscaping and pools at The Oaks of Calabasas and allowing the work to commence before the close of escrow.

Oblas and Adams based their fraud, negligent misrepresentation, and conspiracy causes of action on three misrepresentations. First, Malone falsely stated in his August 3, 2004 letter that if Oblas and Adams hired Harper Pools, the construction would be completed and they would obtain final approval. Second, Robertson falsely stated in his October 8, 2004 letter that Harper Pools would assist in "significantly speeding up" the approval process, including obtaining final approval of the construction.[3] Third, Robertson falsely stated orally that he "had a direct line to obtaining final approval of plans and construction from the Association, including that said plans and construction would be given the necessary final approval based, at least in part, on the association with New Millennium . . . and his representation of personal relationships with the Association architectural committee members." Oblas and Adams alleged that they justifiably relied

---

[1] In the prior appeal, we concluded that Oblas and Adams had stated claims against New Millennium and Malone for breach of contract, fraud, negligent misrepresentation, conspiracy, and slander of title. We reversed a judgment of dismissal after the trial court had sustained a demurrer to the third amended cross-complaint. (*The Oaks of Calabasas Homeowners Assn. v. Oblas* (Mar. 26, 2012, B227873) [nonpub. opn.].)

[2] The parties stipulated to the filing of a fifth amended cross-complaint to correct discrepancies in, and uncertainty over the filing of, the fourth amended cross-complaint.

[3] Oblas and Adams apparently intended references in their fifth amended cross-complaint to an August 8, 2004 letter to refer to the October 8, 2004 letter.

4

on these misrepresentations, and on the concealment and failure to disclose unspecified information, in entering into the contract with Harper Pools.

C.    *The Motion for Summary Judgment*

On April 12, 2013 Harper Pools and Robertson filed a motion for summary judgment or in the alternative for summary adjudication.[4]  They argued that the alleged representation that the completed construction would receive final approval was an opinion or prediction of a future event that did not support a fraud cause of action.  They also argued that Robertson believed the representation was true at the time he made it, that any misrepresentation was unintentional, and that he had no intent to deceive. Robertson stated in his supporting declaration that, based on his 27 years of experience designing and constructing over 1,000 pools, he believed at the time Harper Pools entered into the contract with Oblas and Adams that the Homeowners Association would approve the plans, the construction would conform to the plans, and the Homeowners Association would give final approval to the completed construction.  Robertson also stated that he never "guaranteed" final approval.

In opposition to the motion, Oblas and Adams asserted that they had recently discovered that in December 2004 Robertson had sold his interest in Harper Pools to X-Scapes Construction, Inc.  They stated that they intended to bring a motion for leave to file a sixth amended cross-complaint alleging fraud based on Robertson's failure to disclose he was at the time planning to, and subsequently did, sell the company.  They also argued that the evidence showed that, even if Robertson did not make the misrepresentations described in the fifth amended cross-complaint in writing, he made them orally.  They also conceded they could not establish their conspiracy cause of action as pleaded in their fifth amended cross-complaint (i.e., a conspiracy between Robertson

---

[4]    Although Oblas and Adams did not name Robertson as a cross-defendant in their fifth amended cross-complaint, at some point Robertson apparently appeared as a cross-defendant, and the parties and the trial court treated him as a party.

and Malone), but stated they would seek leave to file a sixth amended cross-complaint alleging a conspiracy between Robertson and others.

On July 3, 2015 the trial court granted the motion by Harper Pools and Robertson for summary adjudication on the causes of action for fraud, negligent misrepresentation, and conspiracy. The court's order stated, "Oblas appears to concede these claims do not lie." Noting that Oblas and Adams had represented that they would be moving for leave to file a sixth amended cross-complaint, the court granted summary adjudication on the three causes of action without prejudice to the court's ruling on the motion for leave to amend, which Oblas and Adams had filed on June 21, 2013. The trial court also granted summary adjudication in favor of Harper Pools and Robertson on the causes of action for estoppel and injunctive relief, ruling that injunctive relief was a remedy and not a cause of action and that Oblas and Adams could allege injunctive relief in the prayer. The court also noted that Oblas and Adams had dismissed with prejudice their breach of contract and slander of title causes of action against Robertson.[5]

D. *The Motion for Leave To File a Sixth Amended Cross-Complaint*

In their motion for leave to file a sixth amended cross-complaint, Oblas and Adams sought to amend their cross-complaint to allege that in December 2004 Robertson failed to disclose his plans to sell Harper Pools and his sale of the company. Their proposed sixth amended cross-complaint also alleged that Robertson continued to work for Harper Pools part-time in sales and design to create the appearance that he was still working on projects at The Oaks of Calabasas, "even though he would have no oversight or control over any of the actual design and construction of the projects moving forward." Oblas and Adams' proposed amendments alleged that they would not have hired Harper

_____

[5] The order stated the court was denying the motion for summary judgment. By granting summary adjudication on all causes of action remaining against Robertson, however, the trial court effectively granted summary judgment in favor of Robertson, albeit with the qualifier that the ruling was without prejudice to the ruling on the pending motion for leave to file a sixth amended cross-complaint.

Pools had they known "that a new entity now owned Harper Pools and would be responsible for the construction of the pool and landscaping." Oblas and Adams also sought to add Mark Merriman and Marc Berger, former officers and owners of Harper Pools, as cross-defendants.

At the time Oblas and Adams filed their motion, the scheduled trial date was August 5, 2013. Oblas and Adams argued that they did not discover until Robertson's deposition in March 2013 that Robertson had sold Harper Pools in December 2004 and that they sought leave to amend their cross-complaint after determining that Malone was not aware of this information and should not be a cross-defendant. They stated that they took Malone's deposition in April 2013, obtained the deposition transcript, signed a release with Malone on June 13, 2013, and filed their motion for leave to amend shortly thereafter.

Harper Pools and Robertson argued in opposition to the motion for leave to amend that Oblas and Adams knew in 2006 that Robertson had sold his interest in Harper Pools or had brought in investors, citing an October 3, 2006 email from Oblas and Adams to Robertson and an October 20, 2008 declaration by Adams. Harper Pools and Robertson argued that, even if Oblas and Adams had only recently learned of the sale, their delay in bringing the motion was unreasonable and would require the court to continue the trial and reopen discovery. They also argued that the new allegations had no merit and did not support a fraud cause of action.

On August 5, 2013 the trial court denied the motion for leave to amend. The court ruled that Oblas and Adams knew as early as 2006 that Robertson had sold Harper Pools and, in the exercise of reasonable diligence, should have discovered that the new owner, X-Scapes, was a fledgling company. The court stated that, even if the failure to discover the facts in 2006 were excusable, Oblas and Adams should have brought the motion sooner after Robertson's deposition in March 2013 and Malone's deposition in April 2013. The court also stated that allowing Oblas and Adams to file the proposed sixth amended cross-complaint would require a trial continuance to allow time for additional discovery and potentially dispositive motions, and would prejudice the other parties.

7

E.	*The Motion for Reconsideration*

On August 14, 2013 Oblas and Adams filed a motion under Code of Civil Procedure section 1008, subdivision (a), for reconsideration of the court's order denying their motion for leave to file a sixth amended cross-complaint. They argued that since the court's denial of their motion for leave to amend they had settled with all of the cross-defendants other than Robertson, the court had vacated the trial date, and Robertson would not be prejudiced by allowing Oblas and Adams to file their proposed amended cross-complaint.

Harper Pools opposed the motion for reconsideration, arguing the prejudice of a trial continuance was not the only reason the court had denied the motion for leave to file the proposed sixth amended cross-complaint. The court also denied the motion based on, among other reasons, the lack of reasonable diligence in bringing the motion and the need to reopen discovery. Harper Pools also stated that it agreed to settle the case based on its understanding that Oblas and Adams would dismiss both Harper Pools and Robertson, and that the parties never finalized the proposed settlement. Harper Pools also disputed the allegation that Robertson was not involved in the design and construction of Oblas and Adams' pool and argued that the evidence showed that he was.

The trial court denied the motion for reconsideration.[6] On December 12, 2013 the trial court entered judgment in favor of Robertson on the fifth amended cross-complaint. Oblas and Adams timely appealed.

**DISCUSSION**

A.	*Standard of Review*

"'On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]'

---

[6]	The order denying the motion for reconsideration is not included in the record on appeal.

8

[Citation.] A motion for summary judgment is properly granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813; see *Rhea v. General Atomics* (2014) 227 Cal.App.4th 1560, 1566.) "'A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. [Citations.] The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. [Citations.] Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted. [Citation.]' [Citation.]" (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 817.) "'In deciding whether a plaintiff has met h[is] burden of proof, we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the defendant.' [Citation.]" (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889.) We independently review the trial court's ruling on a summary judgment motion, liberally construe the evidence in favor of the parties opposing the motion, and resolve all doubts concerning the evidence in their favor. (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606.) "'The same standards apply to motions for summary adjudication.' [Citation.]" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1444.)

B.      *Triable Issues of Material Fact Preclude Summary Judgment*

The essential elements of a cause of action for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469.) The essential elements of a cause of action for negligent

9

misrepresentation are the same except, with respect to the second element, the defendant need only make a representation of fact with no reasonable grounds for believing the representation was true, rather than making the representation with knowledge of its falsity. (*Chapman v. Skype* (2013) 220 Cal.App.4th 217, 231.) Oblas and Adams argue that the court erred in granting Robertson's motion for summary adjudication on their fraud and negligent misrepresentation causes of action because there are triable issues of material fact regarding whether Robertson made the alleged representations and whether he reasonably believed that the Homeowners Association would give final approval of the construction.[7]

Robertson's declaration in support of his motion for summary judgment stated that he believed that Harper Pools would successfully complete the project and obtain final approval because of his 27 years of experience, his successful construction of over 1,000 pools, his capabilities as a designer and manager, Harper Pools' history of success, and his confidence in Harper Pools' construction crews. This evidence satisfied Robertson's initial moving burden on summary judgment by negating the elements of knowledge of falsity (fraud) and no reasonable grounds for believing his representation was true (negligent misrepresentation).[8] It suggests that Robertson actually and reasonably believed that Harper Pools would successfully complete the construction project and that the Homeowners Association would give final approval.

Oblas and Adams, however, created triable issues of material fact by presenting evidence that in December 2004 Robertson was planning to sell and then sold Harper

---

[7] Oblas and Adams do not challenge the order granting summary adjudication on their conspiracy cause of action.

[8] Robertson did not deny that he made the representations alleged in the fifth amended cross-complaint, but stated only that he did not recall stating that he had "a direct line to obtaining final approval of plans and construction from the Association." He stated that if this alleged statement only meant that he was familiar with the requirements and procedures of the Homeowners Association and had direct dealings with individuals acting on its behalf, the statement was true.

Pools, but failed to disclose these facts before the parties signed the construction contract in February 2005. Robertson testified in his deposition, which Oblas and Adams submitted in opposition to the motion for summary judgment, that in April 2004 he began negotiations with X-Scapes for the sale of Harper Pools, that he sold Harper Pools in December 2004, and that he did not inform Oblas and Adams of the sale. It is a reasonable inference from these facts that Robertson knew that his continued participation in the construction was uncertain, Harper Pools would no longer have the benefit of his experience, knowledge, and personal contacts, and therefore Robertson did not believe or had no reasonable grounds for believing that Harper Pools would complete the construction and obtain final approval. Whether a defendant believed or had reasonable grounds for believing that a representation was true depends on the defendant's knowledge, which may be established by inferences from circumstantial evidence. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206-1207; *Clear Lake Riviera Community Assn. v. Cramer* (2010) 182 Cal.App.4th 459, 467.) Thus, there were triable issues of material fact regarding whether Robertson actually believed he would continue his involvement in the construction and the Homeowners Association would give final approval of the construction, and whether he had reasonable grounds for any such beliefs, which precluded summary adjudication on the fraud and negligent misrepresentation causes of action. (See *Intrieri v. Superior Court* (2004) 117 Cal.App.4th 72, 87 [evidence supported a reasonable inference that the defendant knew that his statement was false and lacked reasonable grounds for believing it was true, creating a triable issue of material fact precluding summary adjudication].)[9]

---

[9] Robertson argues that Oblas and Adams attempted to assert a new theory of liability not alleged in their fifth amended cross-complaint by arguing in opposition to the summary judgment motion that he fraudulently concealed his sale of Harper Pools. The fifth amended cross-complaint, however, includes this theory. Robertson's sale of Harper Pools is relevant to the truth or falsity of Robertson's statements implying that he would continue to be involved in the construction and that Harper Pools would continue to have the benefit of his experience, knowledge, and connections.

Robertson also argues that his alleged misrepresentations were predictions of future events and therefore were nonactionable opinions. (See *Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 662.) A representation by a person who possesses or claims to possess superior knowledge, however, may imply knowledge of facts that make the prediction probable. (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 892-893; see *Public Employees' Retirement System v. Moody's Investors Service, Inc.*, *supra*, 226 Cal.App.4th at p. 662 ["'when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact'"].) If there is a reasonable doubt as to whether a statement was an opinion or an affirmation of fact, the trier of fact must decide that question. (*Jolley*, at p. 893; see *Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1081 ["[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury"].) Robertson held himself out as an experienced landscape and pool contractor who had expertise working on projects in The Oaks of Calabasas community, with special information about the approval process. Robertson's alleged representations that he had a direct line to obtaining final approval and that the Homeowners Association would give final approval based in part on his personal relationships with the Homeowners Associations' decisionmakers could reasonably be interpreted to imply that he believed that he would continue to be involved in the construction and that Harper Pools would continue to have the benefit of his experience, knowledge, and contacts within the Homeowners Association. At a minimum, whether his representations were facts or opinions was for the jury to decide.[10]

---

[10] Indeed, Robertson's arguments on appeal about what "self-respecting salesmen" do, about why Robertson would make a misrepresentation that was not in his best interest and would only buy a lawsuit, that Robertson was "motivated by the desire for good word-of-mouth to generate more business in the development," that Harper Pools and

12

Finally, citing *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, Robertson argues that Oblas and Adams did not "establish intent to deceive" because they "have nothing more than non-performance of an alleged oral promise." *Tenzer* involved promissory fraud, where the defendant makes a promise he or she has no intention of performing at the time of the promise. (See *Riverisland Cold Storage, Inc. v. Fresno-Madera Protection Credit Assn.* (2013) 55 Cal.4th 1169, 1183.) In that situation, in order to prevent the plaintiff from converting a routine contract claim into a fraud claim, "'something more than nonperformance is required to prove the defendant's intent not to perform his promise.' [Citations.]" (*Tenzer*, at p. 30.) Oblas and Adams, however, have not alleged a promissory fraud claim. They claim Robertson made false statements and concealed material facts that induced them to enter into a contract and build a pool and landscaping for which they could not obtain approval. The *Tenzer* rule for promissory fraud does not apply.

C.      *The Trial Court Did Not Abuse Its Discretion in Denying Leave*
        *To File the Proposed Sixth Amended Cross-Complaint*

Oblas and Adams argue that the trial court erred by concluding that they unreasonably delayed in seeking to amend their cross-complaint, that further amendment would prejudice Robertson and Harper Pools, and that the allegations in the proposed sixth amended cross-complaint did not state claims. Oblas and Adams argue that, even if they knew in 2006 that Robertson had sold Harper Pools, they did not know at that time that the sale had occurred before Robertson signed the construction contract in February 2005, and in 2006 they had no reason to investigate whether the sale had occurred before February 2005.

A trial court may allow the amendment of a pleading in the furtherance of justice. (Code Civ. Proc., §§ 576, 473, subd. (a)(1).) Generally, a court should grant leave to

Robertson had already built a lot of pools and did not need the business, and that Oblas and Adams' theory "simply makes no sense" are all jury arguments.

amend if the amendment would not prejudice an opposing party. (*P & D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.) The court may deny leave to amend, however, if the party seeking to amend unreasonably delayed seeking an amendment and the amendment would prejudice an opposing party. (*Ibid.*) The need to reopen and conduct further discovery, the cost of additional trial preparation, and trial delay are examples of prejudice that, in the trial court's discretion, may justify the denial of leave to amend. (*Ibid.*; see *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 486-488.)

"[U]nwarranted delay in seeking leave to amend may be considered by the trial court when ruling on a motion for leave to amend [citation], and appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is '"offered after long unexplained delay . . . or where there is a lack of diligence"' [citation]. Thus, when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.' [Citations.]" (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280; see *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 ["appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is 'offered after long unexplained delay . . . or where there is a lack of diligence'"].) We review the denial of a motion for leave to amend a pleading for abuse of discretion. (*Falcon*, at p. 1280.)

Robertson submitted an October 3, 2006 email from Oblas and Adams to Robertson stating that they had learned that Robertson "either sold 'your' company or brought in investors, and you have personally disappeared from our job." (Emphasis omitted.) Robertson also submitted an October 20, 2008 declaration Adams had previously filed in this action, in which she stated that Robertson "had sold his business to investors and did not honor his promises with us." This evidence showed that, several

14

years before they sought to amend their cross-complaint to allege that Robertson had failed to disclose his plans to sell Harper Pools and his subsequent sale of the company, Oblas and Adams were aware of the sale and suspected that Robertson had neglected their construction project. Even if Oblas and Adams did not actually know in October 2006 or October 2008 that Robertson had sold Harper Pools before signing the construction contract in February 2005, the trial court reasonably concluded that they failed to act diligently to discover the facts in light of their actual knowledge and suspicions, and that their delay in seeking leave to amend was unreasonable. Moreover, when the court heard the motion for leave to amend on August 5, 2013, the trial date was only a few days away. The trial court reasonably concluded that allowing Oblas and Adams to allege a new factual basis for their fraud and negligent misrepresentation claims would prejudice the cross-defendants by necessitating the reopening of discovery, a further continuance of the trial, and additional dispositive motions. The trial court did not abuse its discretion in denying Oblas and Adams leave to file a sixth amended cross-complaint.

D.    *The Trial Court Did Not Abuse Its Discretion in Denying the Motion for Reconsideration*

Oblas and Adams contend that, by the time they filed their motion for reconsideration, the trial court had vacated the trial date (because of the pending settlements), so that the prejudice of an imminent trial date no longer existed. Code of Civil Procedure section 1008, subdivision (a), authorizes a court to reconsider its prior ruling on a motion if a party timely moves for reconsideration based on new or different facts, circumstances, or law. We review the ruling on a motion for reconsideration for abuse of discretion. (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.)

The fact that the court had vacated the trial date did not eliminate the other forms of prejudice resulting from the need to reopen discovery and the need, in setting a new trial date, to allow time for further discovery and potential dispositive motions addressing

15

the new allegations.  Nor did the vacating of the trial date negate Oblas and Adams' lack of diligence in seeking leave to amend.  The trial court did not abuse its discretion in denying the motion for reconsideration.

## DISPOSITION

The judgment is reversed with directions to vacate the order granting Robertson's motion for summary adjudication on the fraud and negligent misrepresentation causes of action, and to enter a new order denying his motion for summary adjudication on those causes of action and denying his motion for summary judgment.  Robertson's motion for sanctions is denied.  Oblas and Adams are to recover their costs on appeal.


SEGAL, J.


We concur:



PERLUSS, P. J.



ZELON, J.


16