Filed 7/15/14  Modified and certified for partial publication 8/13/14 (modification and order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN HOFFMAN et al., | H038643 |
| Cross-Complainants and Appellants, | (Santa Clara County Super. Ct. No. 110CV172328) |
| v. | |
| 162 NORTH WOLFE LLC, et al., | |
| Cross-Defendants and Respondents. | |

This case involves a dispute between the owners of adjacent commercial property located in Sunnyvale at 170 North Wolfe Road (170 Wolfe, or 170 Wolfe property) and 162 North Wolfe Road (162 Wolfe, or 162 Wolfe property). In March 2010, appellants Steven Hoffman (Hoffman) and Swee Lin Hoffman (collectively, the Hoffmans), purchased the 170 Wolfe property. After close of escrow, the owner of the 162 Wolfe property, respondent 162 North Wolfe LLC (162 LLC), claimed a landscape easement and prescriptive easement rights of ingress and egress over 170 Wolfe.

162 LLC sued to quiet title. The Hoffmans cross-complained, alleging (among other things) that 162 LLC and its members had defrauded them by falsely advising that they had no claims or interest with respect to the 170 Wolfe property. The Hoffmans alleged two fraud claims—concealment/suppression of facts, and intentional misrepresentation. The fraud claims were based upon an alleged conversation approximately eight months before close of escrow between Hoffman and Jonathon

Owens, one of 162 LLC's members. In response to Hoffman's complaint that vehicles servicing the 162 Wolfe property were crossing over onto 170 Wolfe, Owens said he "would take care of it." After this alleged conversation and for eight months before escrow closed, the vehicles servicing 162 Wolfe continued to cross onto 170 Wolfe. The Hoffmans observed these occurrences. But they neither raised the issue with the then-owner of 170 Wolfe, nor complained to 162 LLC.

162 LLC successfully moved for summary adjudication of the Hoffmans' two fraud claims. The parties later settled their remaining claims, and a judgment was entered with the Hoffmans' reserving their challenge to the propriety of the summary adjudication order. The Hoffmans appealed, arguing that there were triable issues of material fact as to both the concealment/suppression of facts and intentional misrepresentation claims.

We conclude there was no error. The concealment/suppression of facts claim fails because of the absence of evidence supporting all of the requisite elements of that claim. Two elements of the claim not present were (1) a duty on the part of 162 LLC to disclose that it claimed prescriptive easement rights; and (2) the Hoffmans' justifiable reliance on the facts as they understood them without such disclosure (i.e., their understanding that there were no adverse claims against the 170 Wolfe property by the owners of the adjacent property). The intentional misrepresentation claim likewise fails because of the absence of evidence that the Hoffmans justifiably relied on 162 LLC's alleged implicit representation that it did not claim any easement rights over the 170 Wolfe property. We will therefore affirm the judgment.

FACTUAL BACKGROUND

162 LLC, whose members are Jonathon Owens and Thomas Haverstock, is the owner of the 162 Wolfe property. Owens and Haverstock are both patent attorneys, and are partners of Haverstock & Owens, LLP (Law Firm), which is a tenant in the building located on 162 Wolfe. That building is next door to the building on 170 Wolfe.

2

At some time prior to June 2009, Owens and Haverstock had two conversations with Dean Chestnut, a real estate broker representing the then-owner of 170 Wolfe. Chestnut inquired about Owens's and Haverstock's potential interest in purchasing 170 Wolfe. After they received information about the asking price, Owens and Haverstock both indicated to Chestnut that they were not interested in purchasing 170 Wolfe. Chestnut never told the Hoffmans about his conversations with Owens and Haverstock, and neither Owens nor Haverstock ever had any contractual, transactional, or fiduciary relationship with Chestnut.

Hoffman is and has been a licensed real estate broker since 1994. He had in the past owned a residential real estate brokerage firm, CompuRealty, as well as a medical software company, Quicksilver Systems. The Hoffmans also own BackProject, Inc. (BackProject), a company that manufactures medical exercise devices intended to provide relief for back and neck pain; Hoffman is the chief executive officer of BackProject. The Hoffmans own real estate in addition to their residence, namely, a four-unit apartment building, and a townhouse or condominium.

The Hoffmans entered into a contract to purchase 170 Wolfe on April 29, 2009. Approximately two months later (on or about June 26, 2009), BackProject became a tenant in the building located at 170 Wolfe. The Hoffmans closed escrow on their purchase of 170 Wolfe on March 5, 2010.

Shortly after BackProject became a tenant at 170 Wolfe, Hoffman introduced himself to Owens and complained to him that the Law Firm's employees were parking in spaces in front of 170 Wolfe. Owens indicated that the Law Firm employees would cease parking there.[1]

---

[1] As indicated in their summary adjudication motion, 162 LLC is not claiming easement rights over the parking area in front of 170 Wolfe.

3

Hoffman had a second conversation with Owens—the one central to the Hoffmans' fraud claims—that occurred "a couple of weeks" after the first conversation. The second conversation occurred in mid- to late-July 2009, nearly eight months before the Hoffmans closed escrow. Hoffman had observed various 162 Wolfe service vehicles—United Parcel Service, Federal Express, DHL, Costco, a shredding company, and a water delivery service—using 170 Wolfe. He had also observed the Law Firm's employees backing out of parking spaces and crossing over onto 170 Wolfe. Hoffman testified in deposition that as a result of these observations, he spoke with Owens: "Q. Specifically, what did you say to Mr. Owens? [¶] A. I do not want your vehicles crossing the property line. I would appreciate it if you could take care of that. [¶] Q. And what did he say to you in this purported conversation? [¶] A. At this time, 'No problem. We'll take care of it.' [¶] Q. When you said 'your vehicles,' did you tell him what you meant by that? [¶] A. Yes. [¶] Q. What did you tell him? [¶] A. 'Your vehicles that service your building and your employees.' "[2] Hoffman testified he had requested that the vehicles not cross over the property line because he did not want Owens to "get used to this."

At the time of these two conversations in mid-2009, Owens believed, based upon long-standing use, that 162 LLC held by prescriptive easement a "right to drive through the paved area" between the two properties. He did not mention this prescriptive

---

[2] Owens denied this conversation occurred and indicated that he had no conversation with Hoffman concerning the use of any portion of 170 Wolfe for ingress and egress by 162 Wolfe service vehicles or vehicles of Law Firm employees. Haverstock had no knowledge of any such conversation between Hoffman and Owens. For purposes of reviewing the summary adjudication order, we assume the conversation alleged by Hoffman took place. (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35 [moving party's affidavits on summary judgment are strictly construed, and opposing party's affidavits are liberally construed; doubts in resolution of motion should result in its denial]; see also *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1322.)

4

easement right in his conversations with Hoffman because he is "not a real property attorney."

Both before BackProject's occupancy and during its occupancy of 170 Wolfe, there were instances—before the Hoffmans closed escrow—in which the area in which 162 LLC claims a prescriptive easement was temporarily, partially obstructed by vehicles or pallets. 162 LLC did not complain about these temporary obstructions. Additionally, at no time did 162 LLC repair or maintain the disputed area involved in the prescriptive easement, offer to do so, or pay taxes on the area.

After the second conversation between Hoffman and Owens and up to the time escrow closed in March 2010, the Hoffmans continued to observe vehicles that were not servicing 170 Wolfe travel over that property. For Hoffman, this was a "common occurrence." Hoffman did not complain to BackProject's landlord (i.e., the then-owner of 170 Wolfe) about these vehicles' traveling over 170 Wolfe. And the Hoffmans presented no evidence that they spoke to Owens or Haverstock about this issue after Hoffman's second conversation with Owens in July 2009. In his declaration filed in opposition to the summary adjudication motion, Hoffman indicated: "Although my wife and I [after Hoffman's July 2009 conversation with Owens] occasionally observed vehicles from 162 N. Wolfe Rd[.] crossing the property line to 170 N. Wolfe Rd., there were many other issues that we were dealing with and I thought that this particular problem would be taken care of as I had discussed with Jonathan Owens."

Shortly after escrow closed in March 2010, Hoffman met with Owens and Haverstock. Hoffman said that despite his prior requests, vehicles from 162 Wolfe were still crossing over onto 170 Wolfe and he did not want it to continue. Owens responded with words to the effect of " 'Oh, I thought we took care of this already.' " Neither Owens nor Haverstock mentioned anything about 162 LLC claiming prescriptive easement rights over the 170 Wolfe property. Two months later, the Hoffmans became

aware for the first time of 162 LLC's claim to a prescriptive easement over 170 Wolfe when they received a May 5, 2010 letter written by 162 LLC's counsel.

PROCEDURAL BACKGROUND

I.      *The Complaint*

On May 18, 2010, 162 LLC filed a complaint against the Hoffmans and all persons claiming any interest adverse to 162 LLC's title.  It thereafter, in December 2010, filed a first amended complaint (Complaint) alleging two causes of action to quiet title and for injunctive relief.

162 LLC alleged in the Complaint[3] that since January 19, 2001, it has owned the 162 Wolfe property with a 9300 square foot commercial building located thereon.  Since 2002, the Law Firm has occupied the 162 Wolfe building as a tenant.  The Hoffmans are the owners of the 170 Wolfe property adjacent to 162 Wolfe, and they own a business, BackProject, operating out of a building located on 170 Wolfe.  There is a paved alley or driveway (the driveway), approximately 43 feet wide at its narrowest point, running between the two buildings.

Since its acquisition of the 162 Wolfe property in 2001, 162 LLC has "openly, notoriously, and continuously without permission used this paved driveway . . . including the portion on [the Hoffmans'] property, for ingress and egress[,] for access for remodeling/construction, vehicles, parking, commercial use, delivery vehicles[,] and to allow garbage to be picked up at the rear of their building."  162 LLC alleged that it owns a prescriptive easement for ingress and egress burdening 170 Wolfe.  162 LLC also owns a landscape easement involving a triangle of land abutting North Wolfe Road, based upon 162 LLC's having maintained at its expense since 2002 in an open, notorious and hostile

---

[3] In order to avoid redundancy in this paragraph and the following paragraph, we will sometimes dispense with the phrase "162 LLC alleged" in describing the allegations of the Complaint.

manner the landscape and upkeep of the area. "In the last six weeks,[4] [the Hoffmans] have wrongfully and illegally made efforts to stop and infringe upon [162 LLC's] use of the driveway and landscape triangle and its prescriptive easements therein."

162 LLC sought to quiet title in its prescriptive easements for the driveway and landscaping areas. It also sought an injunction prohibiting the Hoffmans from continuing to interfere with 162 LLC's use of the driveway and landscape areas consistently with those easements.

II.     *The Cross-Complaint*

On or about July 2, 2010, the Hoffmans filed a cross-complaint. In their amended cross-complaint filed October 27, 2010 (Cross-Complaint), the Hoffmans named 162 LLC, the Law Firm, Haverstock, Owens, Marie Crowninshield, and Elaine Gallus as cross-defendants (collectively, cross-defendants). The Hoffmans alleged four causes of action for (1) declaratory relief and to quiet title against all cross-defendants; (2) fraud (concealment/suppression of facts) against 162 LLC, Haverstock and Owens;[5] (3) fraud (intentional misrepresentation) against 162 LLC, Haverstock, and Owens; and (4) nuisance/trespass against all cross-defendants.[6]

---

[4] The reference date of the commencement of the Hoffmans' alleged acts of interference is uncertain. Both the original complaint and the amended Complaint (filed December 10, 2010) contain the phrase "[i]n the last six weeks." We surmise that 162 LLC is alleging in the amended Complaint that the Hoffmans' alleged interference occurred within six weeks prior to May 18, 2010, when the original complaint was filed.

[5] The Hoffmans indicate in the captions to the second and third causes of action for fraud (concealment/suppression and intentional misrepresentation) that those claims are alleged against Haverstock and Owens only. But because the Hoffmans allege in those claims that Owens was acting on his own behalf, and on behalf of Haverstock *and* 162 LLC, it is apparent that they intended to allege those causes of action against 162 LLC as well as against its individual members, Haverstock and Owens.

[6] The summary adjudication motion concerned only the second and third causes of action of the Cross-Complaint; therefore, the allegations of the first and fourth causes of action are not detailed here. The record also reflects that the court overruled a demurrer

7

In the second cause of action, the Hoffmans alleged[7] that Owens met with Hoffman in mid-2009, when Hoffman was a tenant at 170 Wolfe. Hoffman said that he was purchasing 170 Wolfe, "and that he did not want vehicles of [162 LLC or the Law Firm], or vehicles of the employees of those entities and/or vehicles servicing these entities crossing over the property line separating" 170 Wolfe and 162 Wolfe. Owens and Hoffman had had a prior conversation that Law Firm employees had been parking their cars on 170 Wolfe; Owens had said "he would take steps to see to it that this no longer occurred." In the later conversation, Owens told Hoffman that "he would see to it that the vehicles [about which Hoffman complained] would no longer cross over the [162-170 Wolfe] property line." Neither Owens nor Haverstock—nor anyone affiliated with 162 LLC or the Law Firm—ever advised the Hoffmans before they purchased the 170 Wolfe property in March 2010 that any of them claimed a prescriptive easement over 170 Wolfe. Additionally, neither Owens nor Haverstock told the real estate broker marketing 170 Wolfe prior to the Hoffmans' purchase that there was a claim of easement rights over 170 Wolfe, notwithstanding that Owens and Haverstock had been offered the chance to purchase it. Owens and Haverstock thus "repeatedly failed to reveal and suppressed the fact that they claimed to own and hold prescriptive easement rights over [170 Wolfe]." The Hoffmans alleged that they were ignorant of the true facts, were justified in proceeding as they did, and were damaged as a result of the concealment and suppression of facts.

In the third cause of action for intentional misrepresentation, the Hoffmans incorporated by reference each allegation made in the second cause of action. They

filed by 162 LLC, the Law Firm, Haverstock, and Owens as to the second and third causes of action of the Cross-Complaint.

[7] In order to avoid redundancy in this paragraph and the following paragraph, we will sometimes dispense with the phrase "the Hoffmans alleged" in describing the allegations of the Cross-Complaint.

alleged that 162 LLC, Haverstock and Owens "implicitly represented" to Hoffman that they did not claim any rights in 170 Wolfe by indicating that "steps would be taken to see to it that vehicles of cross-defendants, their employees and those providing services to them would not cross over the [162-170 Wolfe] property line." The representation was made with knowledge of its falsity, and was intended to induce the Hoffmans to proceed as they did. The Hoffmans justifiably relied on the representation to their damage.

     III.    *The Summary Adjudication Motion*

In August 2011, 162 LLC, the Law Firm, Haverstock, and Owens filed a motion for summary adjudication as to the second and third causes of action of the Cross-Complaint.[8] The Hoffmans opposed the motion. The court granted summary adjudication on December 1, 2011, concluding that there were no triable issues of material fact as to the second or third causes of action alleged in the Cross-Complaint. It reasoned that the moving parties "had no duty to disclose the existence of the claimed easement [because] there was no relationship between [them] and [the Hoffmans]." The court also concluded that the evidence showed that the Hoffmans did not justifiably rely upon Owens's statement to Hoffman that he would "take care of it" in reference to vehicles entering the claimed easement area, and that this statement was "too vague to be enforced."

A judgment was entered on June 22, 2012, after a settlement of the remaining claims of the Complaint and Cross-Complaint. The Hoffmans filed a timely appeal.

---

[8] The moving parties indicated that it was unclear whether the second and third causes of action were also directed against 162 LLC and the Law Firm, because the caption for both causes of action specifically indicated they were directed against Haverstock and Owens. (See fn. 5, *ante*.) Because of that lack of clarity, the two entity cross-defendants joined in the summary adjudication motion.

DISCUSSION

I.      *Summary Judgment and Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a
mechanism to cut through the parties' pleadings in order to determine whether, despite
their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic
Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  As such, the summary judgment
statute, Code of Civil Procedure section 437c,[9] "provides a particularly suitable means to
test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]."
(*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203
(*Caldwell*).)  A summary judgment motion must demonstrate that "material facts" are
undisputed.  (§ 437c, subd. (b)(1).)  "The materiality of a disputed fact is measured by the
pleadings." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250;
see also *Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, revd. on other
grounds *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490.)

"A motion for summary adjudication shall be granted only if it completely
disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of
duty." (§ 437c, subd. (f)(1).)  Like summary judgment, the moving party's burden on
summary adjudication is to establish evidentiary facts sufficient to prove or disprove the
elements of a claim or defense.  (§ 437c, subds. (c), (f).)

The moving party "bears the burden of persuasion that there is no triable issue of
material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar*,
*supra*, 25 Cal.4th at p. 850, fn. omitted.)  A defendant moving for summary judgment
must " 'show[ ] that one or more elements of the cause of action . . . cannot be

---

[9] All further statutory references are to the Code of Civil Procedure unless
otherwise specified.

established' by the plaintiff." (*Id.* at p. 853, quoting § 437c, subd. (o)(2).) A defendant meets its burden by presenting affirmative evidence that negates an essential element of the plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim. (*Aguilar*, at p. 855.)

The standard of review a court of appeal applies to a grant of summary adjudication is the same as that applied to a grant of summary judgment. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.) Since both summary judgment and summary adjudication motions involve pure questions of law, we review independently the granting of summary judgment or summary adjudication of a claim to ascertain whether there is a triable issue of material fact justifying the reinstatement of the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142; *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438 (*Chavez*).) In doing so, we "consider[] all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

In our independent review of the granting of summary judgment or summary adjudication, we conduct the same three-step procedure employed by the trial court. First, "we identify the issues framed by the pleadings because the court's sole function on a motion for summary judgment is to determine whether there is a 'triable issue as to any material fact' (§ 437c, subd. (c)), and to be 'material' a fact must relate to some claim or defense *in issue* under the pleadings. [Citation.]" (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926.) Second, we examine the motion to determine whether it establishes facts justifying judgment in the moving party's favor. (*Chavez*, *supra*, 91 Cal.App.4th at p. 1438.) Third, we scrutinize the opposition—assuming movant has

11

met its initial burden—to "decide whether the opposing party has demonstrated the existence of a triable, material fact issue [to defeat summary judgment or summary adjudication]. [Citation.]" (*Ibid.*; see also *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 688.) Since the moving party here is the defendant, our de novo review tests whether defendant has "show[n] that the plaintiff cannot establish at least one element of the cause of action." (*Aguilar*, *supra*, 25 Cal.4th at p. 853.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

## II. *Fraud (Concealment/Suppression of Fact) Claim*

Because "the pleadings set the boundaries of the issues to be resolved at summary judgment" (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648), we first review the nature of the second cause of action of the Cross-Complaint at issue, i.e., fraud based upon concealment or suppression of fact. The Hoffmans' second cause of action is based upon 162 LLC's[10] failure to disclose its claim of a prescriptive easement over the 170 Wolfe property. They allege that 162 LLC—in failing to disclose this matter either to Hoffman when he spoke to Owens, or when the seller's real estate broker asked Owens and Haverstock whether they were interested in buying 170 Wolfe—"repeatedly failed to reveal and suppressed the fact that [it] claimed to own and hold prescriptive easement rights over [170 Wolfe]." The Hoffmans claim that they were ignorant of the true facts, justifiably relied on 162 LLC's failure to disclose its

---

[10] When we refer to the fraud allegations against 162 LLC and to the arguments of 162 LLC in support of the summary adjudication motion, we are including all moving parties in that shorthand reference, namely, 162 LLC, the Law Firm, Owens, and Haverstock, who are collectively the respondents in this appeal. As noted (see fns. 5 and 8, *ante*), although there is ambiguity in the Cross-Complaint as to which cross-defendants were charged with fraud, all four parties moved successfully for summary adjudication.

12

prescriptive easement claim, and were damaged as a result of the concealment and suppression of facts.

As with all fraud claims, the necessary elements of a concealment/suppression claim consist of " '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' [Citations.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 (*Alliance Mortgage*); see also *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 (*Boschma*).) "Active concealment or suppression of facts by a nonfiduciary 'is the equivalent of a false representation, i.e., actual fraud.' [Citation.]" (*Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291 (*Vega*).) A fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact. (Civ. Code, § 1710, subd. (3) [a deceit includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"]; see also Judicial Council of Cal. Civ. Jury Instns. (2013) CACI No. 1901.)

162 LLC made several arguments below—reiterated on appeal—supporting its claim that summary adjudication of the second cause of action for concealment or suppression of fact was proper. We deem two of them—the absence of a relationship between 162 LLC and the Hoffmans, and the absence of justifiable reliance—to be dispositive.

A.    *No Relationship Between the Parties*

162 LLC reiterates on appeal its argument below that summary adjudication of the second cause of action is proper because of the absence of a relationship between the parties. It contends that because it had no "fiduciary or other transactional relationship with the Hoffmans which would give rise to a duty to disclose material facts known to one party and not the other," it had no duty to disclose to the Hoffmans that it claimed

13

easement rights over the 170 Wolfe property. 162 LLC contends that therefore, as a matter of law, any alleged concealment of these claimed rights was not actionable.

As noted, under Civil Code section 1710, subdivision (3), fraud may consist of a suppression of a material fact in circumstances under which the defendant has a legal duty of disclosure. (See *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735 ["the person charged with the concealment or nondisclosure of certain facts" must be found to be "under a legal duty to disclose them"].) As explained by the Fourth District Court of Appeal, Division One, "There are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]' [Citation.]" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336 (*LiMandri*).) As the court in *LiMandri* explained further, other than the first instance, in which there must be a fiduciary relationship between the parties, "the other three circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. . . . '[W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts.' [Citation.]" (*Id.* at pp. 336-337, original italics, quoting BAJI No. 12.36 (8th ed. 1994).) A relationship between the parties is present if there is "some sort of *transaction* between the parties. [Citations.] Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." (*LiMandri*, at p. 337 original italics, citing *Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 294; see also Use Note to CACI No. 1901 [indicating that for concealment claim not based upon

14

fiduciary relationship, "if the defendant asserts that there was no relationship based on a transaction giving rise to a duty to disclose, then the jury should also be instructed to determine whether the requisite relationship existed"].)[11]

Thus, several cases have rejected fraud claims founded on nondisclosure where there was an absence of a relationship between the plaintiff and the defendant. For instance, in *LiMandri*, *supra*, 52 Cal.App.4th 326, the plaintiff was an attorney representing multiple plaintiffs (including Mr. and Mrs. Deddah [the Deddahs]) in environmental litigation. (*Id.* at p. 334.) LiMandri in separate litigation sued Judkins, an attorney for a lender (Security Trust Company [Security]) that had made a loan to the Deddahs secured by their expectancy interest in the environmental litigation. (*Ibid.*)

---

[11] The Restatement Second of Torts similarly requires that the duty of disclosure be based upon a relationship (i.e., business transaction) between the parties. "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting *in a business transaction* is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, *but only if, he is under a duty to the other* to exercise reasonable care to disclose the matter in question. [¶] (2) One party *to a business transaction* is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, [¶] (a) matters known to him that the other is entitled to know *because of a fiduciary or other similar relation of trust and confidence between them*; and [¶] (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and [¶] (c) subsequently acquires information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and [¶] (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it *in a transaction with him*; and [¶] (e) facts basic *to the transaction*, if he knows that the other is about to enter into it under a mistake as to them, and that the other, *because of the relationship between them*, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." (Rest.2d Torts, § 551, italics added.) Section 551 of the Restatement (Second) of Torts has been cited with approval and relied upon by several California courts. (See, e.g., *Petersen v. Securities Settlement Corp.* (1991) 226 Cal.App.3d 1445, 1457; *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685, 692, fn. 3; *Wells v. John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66, 72, fn. 8.)

After Judkins had spoken with LiMandri, had advised him that Security had made a loan to the Deddahs, and had asked LiMandri about the status of the environmental litigation and its settlement value, Judkins (unbeknownst to LiMandri) filed a notice of lien on behalf of Security as to any proceeds obtained by the Deddahs in the case.  (*Ibid.*)  After the environmental litigation was settled, the Deddahs' share was deposited with the court in a separate interpleader action that caused LiMandri to incur fees and costs, and delayed his receipt of any earned fees.  (*Id.* at p. 335.)  LiMandri sued Judkins for fraud, alleging that in their conversation, he had fraudulently concealed that (1) Security had been granted a lien against the Deddahs' interest in the environmental litigation; (2) Security was claiming superior lien rights; (3) Judkins had prepared a notice of lien bearing LiMandri's name and state bar number and intended to file it; and (4) Judkins was taking steps to interfere with LiMandri's contractual fee relationship with the Deddahs.  (*Id.* at p. 336.)  The court in *LiMandri* held that the plaintiff had failed to state a claim for fraudulent concealment because there was no relationship or transaction between LiMandri and Judkins that imposed upon Judkins a duty to disclose the specifics of Security's lien rights.  (*Id.* at p. 337.)

Similarly, in *Wilkins v. National Broadcasting Co., Inc.* (1999) 71 Cal.App.4th 1066, 1072-1073 (*Wilkins*), the plaintiffs, representatives of "a pay-per-call provider," sued a television network and two of its producers for secretly videotaping a purported business meeting at a restaurant after portions of the videotape were aired in a program entitled " 'Hardcore Hustle.' "  Included among the plaintiffs' claims was a fraud claim based upon nondisclosure of the fact that they were the subject of an investigation by journalists involving hidden cameras, when the plaintiffs believed they were meeting with potential investors.  (*Id.* at p. 1082.)  The appellate court, relying in part on *LiMandri*, *supra*, 52 Cal.App.4th 326, concluded that summary adjudication of that fraud claim was proper, because the plaintiffs "have presented no evidence that they and [the producers] shared the requisite relationship which would impose upon the *NBC Dateline*

16

producers a duty to disclose the use of hidden cameras. [Citations.]" (*Wilkins*, at p. 1083; see also *Deteresa v. American Broadcasting Companies, Inc.* (9th Cir.1997) 121 F.3d 460, 467 (*Deteresa*) [fraud claim by flight attendant who was secretly audiotaped and videotaped during interview by television producer concerning 1994 flight in which O.J. Simpson was passenger was not viable; there was no relationship between her and the defendants as required under *LiMandri*]; *Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 866-867 (*Kovich*) [homeowners' association not liable for nondisclosure to townhome buyer of existence of construction defects and related litigation, where association was not seller, party to contract, or held any relationship to buyer].)

The Hoffmans argue that "there was a relationship between the parties arising out of their mutual interest in the 170 [Wolfe] Property. At the time of Respondents' nondisclosure, the Hoffmans were tenants in possession of the 170 [Wolfe] Property and [were] in the process of purchasing it. 162 LLC . . . claimed easement rights in the 170 Wolfe] Property." Contrary to this assertion, there is no evidence in the record that 162 LLC or its members had any relationship with the Hoffmans. 162 LLC, Owens, and Haverstock were not parties in any way to the transaction involving the Hoffmans and the sellers of the 170 Wolfe property. Thus, the Hoffmans—like the plaintiffs in *LiMandri*, *supra*, 52 Cal.App.4th 326, *Wilkins*, *supra*, 71 Cal.App.4th 1066, *Deteresa*, *supra*, 121 F.3d 460, and *Kovich*, *supra*, 41 Cal.App.4th 863—were not involved in a transaction with the parties they claim defrauded them. Indeed, the Hoffmans' connection with 162 LLC, Owens, and Haverstock is significantly more attenuated than the respective links between the plaintiffs and the defendants in *LiMandri*, *Wilkins*, *Deteresa*, and *Kovich*. Although the Hoffmans (through their business) were tenants at 170 Wolfe and they were in contract to buy that property while 162 LLC claimed easement rights over it, these are not circumstances that constitute a transactional relationship between the parties giving rise to a duty of disclosure under *LiMandri*, *supra*,

17

52 Cal.App.4th at pages 336 to 337.  (See, e.g., *Kovich*, *supra*, 41 Cal.App.4th at pp. 866-867.)**[12]**

In support of their position that a duty of disclosure existed here, the Hoffmans cite *Vega*, *supra*, 121 Cal.App.4th 282.  There, a law firm (Jones, Day, Reavis & Pogue [Jones Day]) that represented the acquiring company in a merger transaction was sued for fraud by a shareholder of Monsterbook.com., the acquired company.  (*Id.* at p. 287.)  The plaintiff "alleged [Jones Day] concealed so-called toxic terms of a third party financing transaction, and thus defrauded him into exchanging his valuable stock in the acquired company for 'toxic' stock in the acquiring company."  (*Ibid.*)  Jones Day prepared a disclosure schedule detailing the toxic terms of the financing transaction, but did not send the disclosure (or any other documents identifying the toxic nature of the financing) to Monsterbook.com, the plaintiff, or their attorneys.  (*Id.* at p. 288.)  Instead, Jones Day told Monsterbook.com's attorneys that "the transaction was 'standard' and 'nothing unusual,' . . . [Jones Day] provid[ed] a different, sanitized version of the disclosure [to Monsterbook.com's attorneys]."  (*Id.* at p. 290.)

Jones Day's demurrer to the plaintiff's complaint was sustained without leave to amend on various grounds, including nonliability for the nondisclosure because the law firm had no duty to disclose.  (*Vega*, *supra*, 121 Cal.App.4th at p. 289.)  The appellate

---

**[12]** As part of their concealment/suppression of facts claim, the Hoffmans allege that Owens and Haverstock failed to disclose to Dean Chestnut, the seller's broker, 162 LLC's claimed easement rights when they spoke with Chestnut about their potential purchase of 170 Wolfe.  The Hoffmans reiterate that factual assertion in their appellate briefs.  They make no legal argument, however, as to the theory upon which such nondisclosure to Chestnut is actionable fraud.  162 LLC had no relationship with Chestnut and owed no duty to him upon which a claim for nondisclosure/suppression of facts may be based.  We conclude that 162 LLC's failure to disclose its claimed easement rights to Chestnut—particularly where there was no inquiry at all about that subject or even concerning 162 Wolfe service vehicles entering onto the 170 Wolfe property—was not actionable by the Hoffmans.

18

court reversed, concluding, among other things, that the plaintiff had adequately pleaded a claim for " 'active concealment or suppression of facts.' " (*Ibid.*, fn. omitted.) Rejecting Jones Day's contention that, as counsel for the adverse party to the merger, it had no duty to disclose the toxic terms of the financing transaction, the court observed that Jones Day "specifically undertook to disclose the transaction and, having done so, is not at liberty to conceal a material term." (*Ibid.*) The court explained further: "Jones Day's invocation of the principle that fraud based on nondisclosure requires an 'independent duty of disclosure' is erroneous. In some but not all circumstances, an independent duty to disclose is required; active concealment may exist where a party '[w]hile under no duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated.' [Citations.] Providing a disclosure schedule which deliberately omitted material facts seems clearly to fit this category." (*Id.* at p. 294, fn. omitted.)

*Vega* is distinguishable. Aside from the procedural differences between the cases—disposition at the pleading stage in *Vega* as contrasted with summary adjudication here—there *was*, in *Vega,* a relationship between the parties based upon a transaction (a merger). The plaintiff was a party to that merger, and Jones Day, in representing the acquiring company, played a substantial role in the transaction. We view the circumstances of the alleged nondisclosure in *Vega* as being significantly different from those here. In *Vega*, Jones Day actively communicated on the subject financing transaction in which it allegedly suppressed material information. Here, 162 LLC was not asked whether it claimed an interest in the 170 Wolfe property, and Owens's alleged statement that "we'll take care of it" cannot be reasonably construed as speaking about 162 LLC's claimed interest in the transaction relating to the 170 Wolfe property. *Vega* is not controlling.

The Hoffmans also rely on *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382 (*Pavicich*) in support of their position. In *Pavicich*, the plaintiff was persuaded to invest

19

as a limited partner in a struggling brew pub project. (*Id.* at p. 386.) The project had a checkered history: a prior joint venture had been dissolved; a settlement agreement and release had been executed; and, at a later date, the former joint venturers no longer involved in the project had asserted that the release had been procured by fraud. (*Id.* at pp. 385-386.) In the negotiations leading up to his investment, the plaintiff asked two of the people remaining in the project (Keller and Wallace) and Santucci (the attorney for some of the parties to the transaction) whether there were circumstances surrounding the early days of the joint venture of which he should be made aware. (*Id.* at p. 386.) Keller and Santucci told the plaintiff that "there had been 'negotiations' with 'two Los Gatos businessmen' which had not been fruitful." (*Ibid.*) Santucci also advised the plaintiff that these " 'two businessmen' had signed a legally binding release to avoid any future problems or claims." (*Ibid.*) Santucci did not disclose that the two businessmen had later asserted that the release had been procured by fraud and that they had threatened litigation. (*Ibid.*)

This court in *Pavicich* concluded that the plaintiff stated a viable cause of action against Santucci for conspiring with Keller to defraud the plaintiff, reasoning that the case could not be decided in Santucci's favor under a theory that he had no duty of disclosure to the plaintiff. (*Pavicich*, *supra*, 85 Cal.App.4th at p. 398.) Rather, since Santucci had spoken on the subject of the two prior investors and had indicated to the plaintiff that the releases they had signed would prevent future problems with the project, the attorney was bound by "the principle that 'where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.] One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.' [Citations.]" (*Ibid.*)[13]

---

[13] The main issue addressed by this court in *Pavicich* was whether Civil Code section 1714.10—requiring that actions against attorneys for civil conspiracy be instituted only where the court has entered an order in advance permitting the claim based

20

*Pavicich*, like *Vega*, is distinguishable.  In *Pavicich*, there was a relationship based upon a business transaction between the plaintiff and the defendant:  The plaintiff was the potential investor in a limited partnership and the defendant was the attorney representing the limited partnership and its general partner that were seeking the plaintiff's investment.  *Pavicich* is thus similar to *Vega*, and dissimilar to this case.  Here, there was no transaction-based relationship between the Hoffmans and 162 LLC.  Furthermore, the factual basis for the nondisclosure claim in *Pavicich* is nothing like the one here.  In *Pavicich*, the plaintiff specifically asked about the early stages of the project; the defendant gave specific information in reply, including making reference to a release, but failed to disclose highly material information concerning that release (i.e., that its legality was being challenged by the former investors).  (*Pavicich*, *supra*, 85 Cal.App.4th at p. 386.)  Here, no such direct inquiry was made by Hoffman and no affirmative response on the subject of a claimed interest in 170 Wolfe was provided by 162 LLC.[14]

The Hoffmans also rely on *Jones v. ConocoPhilips Co.* (2011) 198 Cal.App.4th 1187 (*Jones*).  In *Jones*, the appellate court concluded that at the pleading stage, the plaintiffs (family members of a deceased worker exposed to toxic chemicals) had alleged sufficient facts to support a claim of fraudulent concealment against chemical manufacturers.  Specifically, they alleged that the defendants alone were aware of their products' toxicity, it was a fact not available to the decedent, and the defendants concealed that fact.  (*Id.* at pp. 1199-1200.)  A manufacturer's nondisclosure to the public

---

upon a finding that it is reasonably probable the plaintiff will prevail—applied to bar the plaintiff's claims.  (*Pavicich*, *supra*, 85 Cal.App.4th at pp. 390-398.)

[14] This is not a case, for example, where the Hoffmans made a specific inquiry, such as, "Do you know if anyone is claiming an adverse interest in the 170 Wolfe property?" and 162 LLC responded by stating that its predecessor in title had made no such claim, without revealing that 162 LLC had in fact asserted an adverse claim.  Such circumstances—which are far removed from those here—would present a case more closely aligned to the facts in *Pavicich.*

21

of the toxic nature of its products where the toxicity is known to the manufacturer but not to others is a very different circumstance from a landowner's knowledge that it possesses prescriptive easement rights. *Jones* cannot be used to extend liability for concealment under the facts presented here.[15]

In considering a fraudulent concealment claim, "we begin with the threshold questions of duty. [Citation.]" (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 871.) Based upon the absence of a relationship between the Hoffmans and 162 LLC, we conclude that there was no triable issue of material fact as to the second cause of action of the Cross-Complaint for fraudulent concealment/suppression of facts. (See *LiMandri*, *supra*, 52 Cal.App.4th at pp. 336-337.) Summary adjudication of that claim was properly granted.

---

[15] In addition, the Hoffmans cite *Intrieri v. Superior Court* (2004) 117 Cal.App.4th 72 (*Intrieri*). *Intrieri* concerned various claims brought by the husband and son of a patient with Alzheimer's disease against a nursing home after the patient was injured and ultimately died after an unprovoked attack by a non-Alzheimer's patient who had entered the supposedly secure Alzheimer's unit. (*Id.* at pp. 75-77.) This court concluded that summary adjudication of the claims for willful misconduct/elder abuse, fraud, and negligent misrepresentation was improper. (*Id.* at p. 87.) As to the fraud claim, we held that there was a triable issue of material fact concerning the potential falsity of affirmative representations made by the admissions director to the decedent's son as to the secure nature of the Alzheimer's unit. (*Id.* at pp. 86-87.) In addressing the parties' arguments, we identified in dictum, quoting from *Cicone v. URS Corp.* (1986) 183 Cal.App.4th 194, 201, "the well-established principle that '[a]lthough a duty to disclose a material fact normally arises only where there exists a confidential relation between the parties or other special circumstances require disclosure, where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.] . . ." (*Intrieri*, at p. 86.) Significantly, the fraud claim in *Intrieri* was based upon alleged affirmative misrepresentations of fact (see *id.* at pp. 77, 86); the plaintiffs did not allege a concealment/suppression claim. *Intrieri* does not assist the Hoffmans in their argument that summary adjudication of the second cause of action was improper.

22

B.    *No Justifiable Reliance*

In its moving papers below, 162 LLC argued that summary adjudication of the Cross-Complaint's second cause of action was proper because of the absence of justifiable reliance by the Hoffmans.  It repeats this argument on appeal.[16]  162 LLC contends that "the Hoffmans did not justifiably rely on the promise to 'take care of it' because it is <u>undisputed</u> that after the purported promise was made, employee and service vehicles of [162 LLC] continued to travel in the claimed easement area," and the Hoffmans observed these occurrences.  (Original underscoring.)  We conclude that, even had the Hoffmans established a relationship with 162 LLC that would furnish a basis for liability for fraudulent nondisclosure or concealment—an issue which we have resolved adversely to the Hoffmans as discussed, *ante*—the Hoffmans' claim is not viable because of an absence of justifiable reliance.

A plaintiff establishes reliance "when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction.  [Citations.]" (*Alliance Mortgage*, *supra*, 10 Cal.4th at p. 1239.)  "Reliance can be proved in a fraudulent omission case by establishing that 'had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently.' [Citation.]" (*Boschma*, *supra*, 198 Cal.App.4th at p. 250, quoting *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1093.)

---

[16] In its appellate brief in support of its claim that there is an absence of justifiable reliance by the Hoffmans, respondents cite a depublished decision (*Le Francois v. Goel* (2004) 119 Cal.App.4th 425, 433, 14 Cal.Rptr.3d 321, review granted Sept. 15, 2004, S126630, reversed, *Le Francois v. Goel* (2005) 35 Cal.4th 1094), in violation of rule 8.115(a) of the California Rules of Court.  (See *Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 518.)  We will disregard this improperly cited authority. (Cal. Rules of Court, rule 8.115(a).)

Although a plaintiff's negligence in failing to discover the falsity of the statement or the suppressed information is not a defense to fraud (*Alliance Mortgage*, *supra*, 10 Cal.4th at pp. 1239-1240), a plaintiff's particular knowledge and experience should be considered in determining whether the reliance upon the misrepresentation or nondisclosure was justified. (*Id.* at p. 1240; see also *Seeger v. Odell* (1941) 18 Cal.2d 409, 414: "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable . . . he will be denied a recovery.") Thus, for example, where a woman, who was an attorney, signed a release of liability before sustaining injuries from a horseback riding lesson, and later claimed that she had relied on the defendant's statement that the release was " 'meaningless,' " she was held under the circumstances to have not justifiably relied on that statement. (*Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843-844 (*Guido*); see also *Kahn v. Lischner* (1954) 128 Cal.App.2d 480, 489 [seller did not justifiably rely on buyer's statement estimating land's value, given, among other things, fact that seller was professional of significant intelligence].)

Generally, the question of whether reliance is justifiable is one of fact. (*Alliance Mortgage*, *supra*, 10 Cal.4th at p. 1239; see also *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503.) But the issue "may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." (*Guido*, *supra*, 1 Cal.App.4th at p. 843; see also *Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578, 1586.) Thus, in such instances where the absence of justifiable reliance is one of law, summary judgment or summary adjudication is an appropriate vehicle. (See, e.g., *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 393-394 (*Dore*); *Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 300-303 (*Hinesley*); *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 639-640 (*Camp*).)

24

*Hinesley*, *supra*, 135 Cal.App.4th 289, a case that involved a fraud claim by a commercial tenant of a shopping center, is instructive. There, the plaintiff tenant alleged that the landlord's agent made representations to the effect that three chain businesses would be occupying the shopping center by the end of 1998; the plaintiff alleged that he was induced by these representations to enter into the lease in July 1998. (*Id.* at p. 292.) Two of the tenants never leased space in the center; the third did, but not until December 2000. (*Id.* at p. 292, fn. 1.) The plaintiff's lease included a provision (paragraph 25.33) that the landlord had made no representations, and the tenant had not relied upon any representations, regarding the identities of any specific tenants that would occupy the shopping center. (*Id.* at p. 297.) The plaintiff, who was represented by counsel in the lease negotiations, testified that he was certain he had read that provision of the lease. (*Id.* at pp. 297-298.) Had the three proposed tenants occupied space in the center, their aggregate space would have constituted approximately five percent of the total leasable space. (*Id.* at p. 298.) And it was undisputed that the plaintiff never asked the landlord about the contractual status of the three proposed tenants or indicated that his decision to enter into the lease was based upon the proposed tenants' occupancy of the center. (*Ibid.*)

The appellate court concluded that summary judgment of the fraud claim was properly granted because the plaintiff as a matter of law had not justifiably relied on the landlord's alleged representations. (*Hinesley*, *supra*, 135 Cal.App.4th at pp. 300-303.) The court reasoned: "In the complete absence of any actions taken to question, clarify, or confirm the contractual status of the three cotenants, to notify his attorney of the representations or to modify paragraph 25.33, Hinesley could not justifiably rely on his understanding of the representations and gestures made by [the landlord's agent]." (*Id.* at p. 303.)

Here, the Hoffmans' nondisclosure/concealment claim is based upon a single July 2009 conversation between Owens and Hoffman. In that conversation, Hoffman—after observing various vehicles servicing 162 Wolfe and vehicles of the Law Firm's

25

employees encroaching onto 170 Wolfe—told Owens, "I do not want your vehicles crossing the property line. I would appreciate it if you could take care of that." Owens responded, " 'No problem. We'll take care of it.' " It is undisputed that after this alleged conversation, both of the Hoffmans continued to observe vehicles from 162 Wolfe traveling over 170 Wolfe, and that this was, at least as to Mr. Hoffman, a "common occurrence."[17] These observations notwithstanding, the Hoffmans did not complain about these vehicles' traveling over 170 Wolfe to the then-owner of 170 Wolfe. Nor did the Hoffmans make a complaint to 162 LLC or its members.

Owens's statement that "we'll take care of it"—in response to Hoffman's complaint about vehicles traveling onto 170 Wolfe—was arguably insufficient, of itself, for the Hoffmans to have justifiably relied upon an understanding that 162 LLC had no claimed easement rights over 170 Wolfe. We will assume, however, that this ambiguous statement was, in the abstract, sufficient for such justifiable reliance, in light of the substance of the Hoffman-Owens conversation and their prior conversation about cars owned by Law Firm employees parking in front of 170 Wolfe. But any such reliance, under the circumstances here, was unreasonable. Hoffman was an experienced real estate agent who had owned several businesses and owned several pieces of real property; his

---

[17] In his deposition, in response to the question of whether it was "a common occurrence" that he observed vehicles, after July 2009, traveling onto 170 Wolfe that did not belong on that property, Hoffman testified "[t]hat would be a reasonable way of characterizing it, yes." He also indicated in his deposition that his wife would "occasionally" report to him that she had observed vehicles crossing onto 170 Wolfe that did not belong on that property. Hoffman declared (over a year later) in opposition to the motion that he and his wife "occasionally observed vehicles from 162 N. Wolfe Rd crossing the property line to 170 N. Wolfe Rd." But the court may properly disregard his declaration, to the extent it contradicts his prior sworn deposition testimony indicating that such observation by him was a "common occurrence." (See *Archdale v. American Intern. Specialty Lines Ins.* (2007) 154 Cal.App.4th 449, 473, citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [court should disregard summary judgment opponent's "self-serving declarations [that] contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony"].)

experience and sophistication are relevant factors in determining the Hoffmans' justifiable reliance. (See, e.g., *Guido*, *supra*, 1 Cal.App.4th at pp. 843-844; *Kahn v. Lischner*, *supra*, 128 Cal.App.2d at p. 489.) His failure to make further inquiry or complaint about the trespassing vehicles was unreasonable, notwithstanding his explanation that "there were many other issues that [the Hoffmans] were dealing with and [he] thought that this particular problem would be taken care of."

The Hoffmans—analogous to the plaintiff-tenant in *Hinesley*, *supra*, 135 Cal.App.4th 289, who was faced with a lease term that directly contradicted his claimed reliance upon the landlord's representations—observed vehicle trespasses for eight months, contradicting Owens's "we'll take care of it" statement that they claim led them to believe that 162 LLC claimed no interest in the 170 Wolfe property. And like the plaintiff in *Hinesley*, the Hoffmans never told anyone at 162 LLC that their decision to buy the 170 Wolfe property was based upon an understanding (from Owens's ambiguous statement) that 162 LLC made no claim against 170 Wolfe. Under the circumstances, the Hoffmans' reliance was not justifiable as a matter of law. (See, e.g., *Matthews v. Kincaid* (Alaska 1987) 746 P.2d 470, 472 [four-plex buyer's fraud claim against seller based on nondisclosure of absence of off-street parking not maintainable due to absence of justifiable reliance; lack of off-street parking was fact that would be obvious to buyer making ordinary inspection and inquiry].) Thus, even assuming there was a legal duty of disclosure on the part of 162 LLC due to the existence of a relationship with the Hoffmans, summary adjudication of the second cause of action was appropriate because of the failure of the Hoffmans to present evidence of justifiable reliance. (See, e.g., *Dore*, *supra*, 39 Cal.4th at pp. 393-394; *Camp*, *supra*, 35 Cal.App.4th at pp. 639-640.)

II.  *Third Cause of Action for Fraud (Intentional Misrepresentation)*

The Hoffmans alleged in the third cause of action, captioned as a claim for "Intentional Misrepresentation," that Owens "implicitly represented" to Hoffman that 162 LLC did not claim any rights in the 170 Wolfe property. (Emphasis omitted.) They

27

argued below that Owens's statement, in response to Hoffman's complaint about vehicles servicing 162 Wolfe traveling on the 170 Wolfe property, that he'd "take care of it," was "actionable as an implicit misrepresentation." The Hoffmans contended that it was not required under the law that a misrepresentation, to constitute actionable fraud, be explicit; it "may be implied by or inferred from the circumstances." The Hoffmans also urged that Wolfe's "take care of it" statement was actionable as a false promise as well. They reiterate these positions on appeal.

An intentional misrepresentation is "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." (Civ. Code, § 1710, subd. (1).) "A misrepresentation need not be oral; it may be implied by conduct. [Citations.]" (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567 [computer hacking resulting in unauthorized use of telephone access codes to make long distance phone calls constituted implied misrepresentation by hackers as to their identity]; see also *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 151.) A false promise is "[a] promise, made without any intention of performing it." (Civ. Code, § 1710, subd. (4).)

The court below concluded that the alleged implied misrepresentation that "we'll take care of it" in reference to trespassing vehicles was "too vague to be enforced." (Cf. *Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 156 [borrower's vague testimony of lender's statement " 'no problem' " concerning future loan applications, and that lender "agreed to process the loan application and said he would comply" insufficient to establish false promise to make loan].) Even assuming the statement satisfied the element of making an implied misrepresentation of fact or a false promise to support the fraud cause of action alleged, like the concealment/suppression of facts claim, the Hoffmans' misrepresentation claim fails because the record shows no justifiable reliance.

As noted, *ante*, for approximately eight months after Owens's "we'll take care of it" statement, the Hoffmans observed vehicles from 162 Wolfe continuing to travel over

28

170 Wolfe. As to Mr. Hoffman, this was a "common occurrence." Notwithstanding these continuous trespasses, as well as Hoffman's sophistication as a real estate broker, property owner, and business owner (see *Guido*, *supra*, 1 Cal.App.4th at pp. 843-844), the Hoffmans did not complain about this activity to the then-owner of 170 Wolfe or to 162 LLC or its members. Their reliance was unreasonable as a matter of law and summary adjudication of the third cause of action on this ground was proper. (See *Dore*, *supra*, 39 Cal.4th at pp. 393-394.)[18]

---

[18] 162 LLC makes a number of additional arguments in support of its contention that summary adjudication of the second and third causes of action was proper. These arguments include (1) Haverstock was not liable for fraud since he had no conversations with the Hoffmans relative to vehicles servicing 162 Wolfe using the 170 Wolfe property; (2) both claims had no merit because there was no evidence of fraudulent intent; (3) both claims had no merit because there was no evidence of actual reliance; and (4) Owens's statement that "we'll take care of it" was too vague and equivocal to support a claim for false promise. Because we have determined that the court properly granted summary adjudication of the second and third causes of action because of the absence of justifiable reliance and that the second cause of action for fraudulent concealment/ suppression fails because 162 LLC had no duty of disclosure, we need not address 162 LLC's additional summary adjudication arguments. (See *Smith v. St. Jude Medical, Inc.* (2013) 217 Cal.App.4th 313, 316, fn. 3; *Jones v. County of Los Angeles* (2002) 99 Cal.App.4th 1039, 1044.)

DISPOSITION

The judgment is affirmed.

 

 

 

 

_____

Márquez, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Grover, J.

Filed 8/13/14

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN HOFFMAN et al.,<br><br>    Cross-complainants and Appellants,<br><br>v.<br><br>162 NORTH WOLFE LLC et al.,<br><br>    Cross-defendants and Respondents. | H038643<br>(Santa Clara County<br>Super. Ct. No. 110CV172328)<br><br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING**<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on July 15, 2014, be modified as follows:

1.  On page 2, first sentence of the first full paragraph, after "162 LLC" add the following: "and related parties"

2.  On page 3, line 1 of footnote 1 the word "their" is changed to "the"

3.  On page 5, at the end of the second full paragraph (after "Jonathan Owens.") add the following: "While escrow was pending, Hoffman did not receive any information—from conversations with his real estate agent and his land consultant, from his review of the preliminary title report, or from any other source—that there was a claimed easement over 170 Wolfe. Chestnut, the seller's broker, was unaware of any claimed easement over the 170 Wolfe property."

4. On page 9, line 4 of footnote 8, after the first sentence delete "(See fn. 5, *ante*.)"

5. On page 12, lines 4 and 5 of footnote 10, after "As noted" delete "(see fns. 5 and 8, *ante*)," and replace with "(see fn. 8, *ante*),"

6. On page 18, lines 1 and 2, after "866-867.)" and before the footnote insert: "We reject the Hoffmans' contention that because they were potential buyers in a pending sale of 170 Wolfe while LLC claimed undisclosed easement rights over that property, there was a relationship between the parties triggering a duty of disclosure on the part of 162 LLC."

7. On page 22, first full paragraph, first sentence, the word "questions" is changed to "question"

8. On page 23, line 5 of the second paragraph, after "1239" and before the period add the following: "; see also CACI No. 1907 (2013 ed.) [reliance shown if misrepresentation, concealment or false promise "substantially influenced" plaintiff and he or she "would probably not have" acted absent it]"

9. On page 24, line 1 of the first paragraph, before "Although" add the following: "After establishing actual reliance, the plaintiff must show that the reliance was reasonable by showing that (1) the matter was material in the sense that a reasonable person would find it important in determining how he or she would act (*Charpentier v. Los Angeles Rams Football Co.* (1999) 75 Cal.App.4th 301, 3130); and (2) it was reasonable for the plaintiff to have relied on the misrepresentation. (*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475; see also CACI No. 1908 (2013 ed.).)"

10. On page 24, line 5 of the first paragraph, after "also" add the following: "CACI No. 1908 (2013 ed.).)"

11. On page 24, lines 5 and 6 of the first paragraph, delete: "*Seeger v. Odell* (1941) 18 Cal.2d 409, 414:"

2

12. On page 24, line 7 of the first paragraph, after " ' . . .recovery.' " delete ")" and add the following: "(*Seeger v. Odell* (1941) 18 Cal.2d 409, 414.)"

13. On page 24, line 5 of the second paragraph, after "also" add the following: "*California Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 672 (*Moody's Investors*);"

14. On page 26, first full paragraph, after the second sentence insert a new paragraph beginning with the sentence "But any such reliance . . ."

15. On page 27, line 3 of the first partial paragraph, after "489" and before the period add the following: "; cf. *Moody's Investors*, *supra*, 226 Cal.App.4th at p. 673 [notwithstanding sophistication of plaintiff state public pension fund, its reliance on defendants' erroneous ratings of investments not unreasonable as matter of law; investments "existed in a 'shroud of secrecy' and very few persons . . . were privy to [the investments'] composition"]"

16. On page 27, line 6 of the first partial paragraph, after " ' . . . taken care of.' " add the following: "Moreover, we conclude that the Hoffmans' reliance was unjustified as a matter of law, despite evidence they believe to be favorable to their position on this issue, such as (1) 162 LLC's having asserted no easement claim while escrow was pending; (2) 162 LLC's having never made a complaint when the Hoffmans' vehicles and pallets occasionally and temporarily obstructed the easement area while escrow was pending; (3) the absence of anything in the record disclosing prescriptive easement rights over 170 Wolfe; and (4) the Hoffmans' having not been informed of the easement at any time during their conversations and investigation while escrow was pending."

There is no change in the judgment.

3

The petition for rehearing filed on behalf of appellants Steven A. Hoffman and Swee Lin Hoffman is denied.


Dated:_____          _____
                                          Márquez, J.




                                          _____
                                          Bamattre-Manoukian, Acting P.J.




                                          _____
                                          Grover, J.

4

Filed 8/13/14

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN HOFFMAN et al., | H038643 |
| Cross-complainants and Appellants, | (Santa Clara County Super. Ct. No. 110CV172328) |
| v. | |
| 162 NORTH WOLFE LLC et al., | **ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION** |
| Cross-defendants and Respondents. | |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105, it is hereby ordered that the appellate opinion filed herein on July 15, 2014, as modified by order of this date, is certified for publication in the Official Reports, except for the following sections: PROCEDURAL BACKGROUND, sections I and II; and DISCUSSION, section I.


Dated:_____ 			_____
							Márquez, J.



							_____
							Bamattre-Manoukian, Acting P.J.



							_____
							Grover, J.

Trial Court:                                    Santa Clara County Superior Court


Trial Judge:                                    Honorable Derek Woodhouse


Attorneys for Cross-complainants and            D. D. Hughmanick
Appellants:                                     Martin D. Dioli
                                                TERRA LAW LLP


Attorneys for Cross-defendants and              Mark B. Fredkin
Respondents:                                    Anthony Marsh
                                                Linda M. Macleod
                                                MORGAN, FRANICH, FREDKIN &
                                                MARSH