Filed 1/4/23  B.M. v. D.V. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| B.M.,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br> D.V.,<br><br>    Defendant and Appellant. | D080908<br><br><br>(Super. Ct. No. FLHE2003482) |

APPEAL from an order of the Superior Court of Riverside County, Johnnetta E. Anderson, Judge.  Affirmed.

Law Office of Randy K. Bell and Randy K. Bell for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

D.V. appeals a domestic violence restraining order (DVRO) imposed by the court as requested by B.M., the father of D.V.'s child, G.M.[1]  D.V. contends the trial court abused its discretion by granting a DVRO based on

---

1    Pursuant to rule 8.90 of the California Rules of Court, we refer to the parties and their child by first and last initials only.

conduct that could not constitute abuse for purposes of granting a restraining order under the Domestic Violence Protection Act (DVPA). (Fam. Code,[2] § 6200 et seq.) D.V. also contends that even if the alleged conduct could constitute abuse, there was insufficient evidence to support the trial court's findings.[3]

We conclude that the conduct, as alleged, could constitute domestic violence under the DVPA. Further, we conclude the trial court had a sufficient evidentiary basis to issue a permanent DVRO. Because the trial court did not abuse its discretion, we affirm the order.

## I.  PROCEDURAL AND BACKGROUND FACTS

As the appellant, D.V. has the burden of providing an adequate record, showing that error occurred, and that the error was prejudicial. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.) Absent an adequate record to demonstrate error, a reviewing court presumes the judgment or order is supported by the evidence. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136–1137.) Since D.V., as appellant, has not presented a complete version of the relevant facts, we set forth below a more detailed explanation of the events leading to these proceedings.

---

[2]    All statutory references are to the Family Code unless otherwise specified.

[3]    Although B.M. did not file a brief in this appeal, D.V. still bears the "affirmative burden to show error whether or not the respondent's brief has been filed," and we "examine the record and reverse only if prejudicial error is found." (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 110, fn. 1 (*F.M. & M.M.*).)

A.     *Relationship Between D.V. and B.M.*

D.V. and B.M., who both have extensive histories of abusing narcotics, met in a drug rehabilitation program.  They dated for about five years and eventually moved in together.  During this time, they used drugs together every day.

In 2016, the parties had a child, G.M.  D.V. and B.M. continued to use drugs both during the pregnancy and after G.M. was born.  G.M. was born addicted to drugs, so Child Protective Services (CPS) initiated a dependency case to remove him from D.V.'s custody.  B.M. maintained full custody of G.M. during the dependency case.  Once the dependency case ended in 2017, the court granted joint physical and legal custody to both parents.  B.M. and D.V. resumed living together in an apartment as co-parents of G.M. for almost a year before being evicted.  After that, D.V. moved in with her father, and B.M. moved in with his mother.  Despite living apart, B.M. said they continued with an on-and-off relationship as a couple.

In December 2018, D.V. requested and obtained a DVRO against B.M.  She requested the DVRO because of an incident where B.M. accused her of sleeping with someone else, grabbed her hair and hit her, and then threatened to "kill" her and "dump [her] body" off a freeway.  Despite the claimed abuse, she chose to not go through with a permanent DVRO in 2018 saying she was "loyal" to B.M. and wanted their family to work.  B.M. said the court dismissed the 2018 DVRO.[4]

On June 8, 2020, D.V. filed another request for DVRO accusing B.M. of a variety of abusive conduct toward D.V. and their son.  Among other things,

---

[4]     The record on appeal does not include D.V.'s DVRO against B.M. from 2018.

she claimed that B.M. showed up at her home unannounced and loudly cursed at her from the front door; disclosed or threatened to disclose personal and embarrassing information about her to friends and family; spread false rumors about her being a prostitute; threatened to shoot her with a gun; physically hit both D.V. and G.M.; repeatedly texted her with what the court found to be "very vulgar" accusations about her promiscuity; sent her ominous messages about how he is "mentally unstable" and wants to "harm" himself, D.V., and G.M. whenever they were are around him; and frequently stole her phone to search through it or destroy evidence of his abuse. The court issued a temporary DVRO against B.M.

At a hearing on the merits in August 2020, B.M. generally denied ever being physically abusive or having contacted D.V. after the temporary restraining order issued in June 2020. B.M. also claimed that he decided to get sober and entered a drug rehabilitation program after D.V. filed the DVRO in June 2020. Ultimately, the court found there was insufficient evidence to grant a permanent restraining order. The court was skeptical of D.V.'s claims of abuse, noting that B.M. is in her life "consensually," and that she "voluntarily" got together with him on a weekly basis. The court also found that both parents were placing G.M. at risk by using drugs and arguing in front of him. Since the main issues raised concerned "drugs" and "custody," the court ordered CPS to conduct an immediate welfare check and investigation of D.V. and B.M. For the time being, the court maintained the prior temporary orders, which gave full custody of G.M. to D.V. The court commented that B.M. was "not really in a position to have custody" at the time because he was undergoing inpatient rehabilitation.

The CPS investigation "found no evidence to suggest that the child, [G.M.], is at risk of abuse or neglect in the care of the mother, [D.V.]."

Accordingly, CPS determined that G.M. "can be safely maintained in the care" of D.V. and that there appeared to be "no nexus" between D.V.'s prior substance abuse relapse and the care of G.M. The investigation was "inconclusive" as to B.M., however, because CPS was unsuccessful in its efforts to contact him. Therefore, CPS determined that G.M. could not be safely maintained in B.M.'s care at this time.

B.    *B.M.'s First DVRO Request Against D.V.*

Approximately six months later, in April 2021, B.M. requested a DVRO against D.V. B.M. stated in a supporting declaration that D.V.'s brother called a CPS hotline regarding her continued drug use and tendency to leave G.M. "unsupervised" with dangerous objects and equipment. B.M. further claimed that D.V. "absconded" from both a CPS social worker investigating the situation and from B.M. during a recent custody exchange. Lastly, B.M. alleged that D.V. violated the current custody arrangements "on numerous occasions" over the prior several months by not allowing him to visit G.M. during the specified time. The court issued a temporary DVRO against D.V. that awarded sole legal and physical custody of G.M. to B.M. and denied D.V. visitation rights.

However, the court subsequently dismissed B.M.'s DVRO at a hearing on May 21, 2021. Although the court was concerned about D.V.'s continued drug use, the court did not "see this as a domestic violence matter" based on the allegations. The court granted D.V. visitation rights for "no less than five hours a week" based on her representation that she was now staying in an all-women's "mommy and me" rehabilitation program that allows mothers to keep their children on site. The court otherwise maintained the custody orders in favor of B.M. until another judge could decide a more permanent custody order at a later hearing.

C.     *B.M.'s Second DVRO Request Against D.V.*

A few months later, on August 3, 2021, B.M. requested another DVRO against D.V.  B.M.'s supporting declaration restated many of the drug-related allegations from his initial DVRO request.  But B.M. also alleged a new incident in which D.V. abducted G.M. and threatened to keep G.M. away from B.M. permanently.  B.M. asserted that he was in "fear for [his] son's life," since D.V. "is a habitual drug user" who had "previously absconded with our son when CPS was investigating her earlier this year."  Based on these allegations, the court issued the temporary DVRO against D.V.

During the permanent restraining order hearing, B.M. testified that he enrolled G.M. in preschool after obtaining full custody in May 2021, and later he enrolled G.M. in kindergarten in August 2021.  B.M. provided the daycare with the existing custody and visitation orders and explained that D.V. was not allowed to pick up G.M.  At about 5:00 p.m. on August 2, 2021, however, D.V. arrived at the school as B.M.'s mother was picking up G.M.  D.V. grabbed G.M. from B.M.'s mother's car, "threatened" B.M.'s mother with "paperwork" by claiming that G.M. belonged to her notwithstanding any court orders, and drove off with G.M.  B.M.'s mother and employees at the kindergarten called the police to report the incident.  Later that evening, D.V.'s mother contacted B.M. and advised him to contact D.V. "to work this visitation [*sic*] if [he wanted] to ever see [G.M.] again."

B.M. spoke with the police to inform them of the existing custody order and advised them that D.V. likely took G.M. to her rehabilitation center.  The police and CPS went to D.V.'s rehabilitation center on August 2 and 3, 2021.  The center confirmed that D.V. was there but refused to disclose whether G.M. was there without a search warrant.  Eventually, D.V. called the police to confirm she had G.M. with her at the rehabilitation center.  The police

then relayed this information to B.M. late at night on August 4, 2021.[5] They said he could pick G.M. up either that night or the next morning. B.M. then went with the police the next morning to pick up his son from the rehabilitation center.

At the hearing, the court asked counsel whether the allegation that D.V. "abducted the minor child in violation of a court order" could "rise to the level of domestic violence." B.M.'s counsel argued it does because by knowingly violating the custody order and keeping the child in a drug rehabilitation center for three days without cooperating with the police, D.V. took the child "out of his routine" and "put the child at risk." D.V.'s counsel responded that this was simply a child custody dispute, because there were no allegations that D.V. had "any interest or anything that she wants to do with [B.M.] except for having her child back."

Initially, the court agreed with D.V.'s counsel that "this is a custody issue." Nevertheless, the court determined that D.V. disturbed B.M.'s peace in violation of the DVPA. The court found that "from August 2nd until August 5th," B.M. "had to not be at peace in terms of what was going on with this minor child," as shown by "the efforts he had to take to try and retain physical custody of the minor child." The court characterized the ordeal as "unsettling." Accordingly, the court granted the DVRO against D.V., awarded full legal and physical custody of G.M. to B.M., and maintained the five hours of supervised visitation per week to D.V. This appeal followed.

---

[5] B.M.'s testimony was inconsistent as to whether G.M. was at the rehabilitation facility for three days or four days. As any ambiguity in the record is resolved in favor of the appealed judgment (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631), we will assume the trial court found G.M. was at the facility for the longer duration of four days.

## II.    APPLICABLE STANDARDS

Upon "reasonable proof of a past act or acts of abuse," a court may issue a protective order "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§§ 6220; 6300, subd. (a).)  The statute should "be broadly construed in order to accomplish [its] purpose" of preventing acts of domestic abuse.  (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498 (*Nadkarni*).)

The DVPA defines "abuse" as "intentionally or recklessly" causing or attempting to cause bodily injury, sexual assault, placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another, or engaging in any behavior that could be enjoined pursuant to section 6320.  (§ 6203, subd. (a).)  "Abuse is not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).)  Rather, it includes a broad range of harmful behaviors enumerated under section 6320, including "disturbing the peace of the other party."  (§ 6320, subd. (a).)

Section 6320, in turn, defines "disturbing the peace of the other party" as conduct that, "based on the totality of the circumstances, destroys the mental or emotional calm of the other party."  (§ 6320, subd. (c); *Nadkarni*, *supra*, 173 Cal.App.4th at p. 1497.)  This conduct "may be committed directly or indirectly, including through the use of a third party, and by any method or through any means." (§ 6320, subd. (c).)  Disturbing the peace "includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty." (§ 6320, subd. (c).)

We review the trial court's grant or denial of a DVRO request for an abuse of discretion. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) Abuse of discretion occurs if the trial court exceeds the bounds of reason, fails to apply correct legal standards and thereby acts outside the confines of the applicable principles of law, or acts without substantial support in the evidence. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420–421.)

" 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) "We draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence." (*J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935.) "All conflicts in the evidence are drawn in favor of the judgment," and "[w]hen supported by substantial evidence, we must defer to the trial court's findings," including its finding on the credibility of witnesses. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364–365.)

## III. ANALYSIS

### A. *The Alleged Conduct Could Constitute Abuse*

D.V. contends the trial court abused its discretion by issuing the DVRO on September 14, 2021, because her conduct, as alleged, could not constitute domestic violence under the DVPA. Specifically, she argues that the violation of a child custody order, without more, cannot constitute abuse. As we

explain below, we disagree with D.V.'s interpretation of the trial court's ruling, and we conclude the trial court did not abuse its discretion as to what conduct could constitute domestic violence under the DVPA.[6]

D.V. primarily seizes on the court's comment at the hearing that "this is a custody issue, and it should have been dealt with by [a request for order] as part of a restraining order." Noting the lack of allegations regarding physical violence toward B.M. or harm to G.M., she argues that the allegations were limited to her taking G.M. for three days in violation of existing custody orders. To D.V.'s point, the court indicated that the allegations in B.M.'s prior DVRO request—which included D.V.'s drug use, her leaving G.M. unattended, and her previously "absconding" with G.M. during a custody exchange—were all "collateral issues" that were not "material or relevant" to its current determination.

Even if B.M.'s allegations were limited to D.V.'s August 2, 2021, custody order violation, however, the alleged conduct arguably could constitute a disturbance of B.M.'s peace. As one of our sister courts observed in dicta, "if the evidence establishes that [a parent] has cut off access to [a child] in violation of the court's order granting [the other parent] sole legal and physical custody, that may constitute abuse" by disturbing the peace of the other parent. (*F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 120, fn. 5.) The

---

[6] Mother largely relies on the depublished case *In re Marriage of L.R. & K.A.* (2021) 66 Cal.App.5th 1130 (depublished Nov. 10, 2021, S271047), in violation of rule 8.1115(a) of the California Rules of Court. (*See Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1193, fn.16.) We will not rely upon this unpublished authority. (Cal. Rules of Court, rule 8.1115(a).)

allegation that D.V. knowingly violated the custody order makes the conduct even worse. "A knowing violation of a [court order] cannot be characterized 'as "a de minimis and technical violation." ' " (*See N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 603 (internal quotation omitted).)

In any case, the court's ruling was not limited to the violation of the custody order. The court focused on the alleged abduction of G.M. and the emotional ramifications of D.V.'s keeping G.M. away from B.M. Specifically, the court highlighted "the efforts [B.M.] had to take to try and retain physical custody of the minor child." The court also emphasized that B.M. "had to not be at peace in terms of what was going on with this minor child," particularly since B.M. believed that D.V. was keeping G.M. at a drug rehabilitation center. Further, although the court did not discuss it, we presume the court also considered B.M.'s allegation that D.V. and her mother threatened to keep G.M. permanently unless B.M. complied with D.V.'s demands. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."] (emphasis in original).)

Altogether, these allegations fall within the ambit of the DVPA's definition of "disturbing the peace." Although the "DVPA was not enacted to address all disputes between former couples" (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 13), "[d]epriving a parent of access to his or her child certainly may qualify as abuse under this definition. (*F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 120, fn. 5.) Moreover, section 6320 lists nonexhaustive examples of "coercive control" that as a pattern of behavior can constitute " 'disturbing the peace of the other party.' " (§ 6320, subd. (c).) These examples include "[i]solating the other party from friends, relatives, or other

11

sources of support" and "[c]ompelling the other party by force, threat of force, or intimidation . . . to abstain from conduct in which the other party has a right to engage." (§ 6320, subd. (c)(1), (4).) Although the court did not treat the "absconding" allegations in B.M.'s prior DVRO request as relevant or material to its final decision, the prior "absconding" establishes a pattern of behavior by D.V. of isolating B.M. from their son, or alternatively, forcing or threatening to force B.M. to abstain from engaging in his right to have custody of G.M.

Accordingly, the conduct as alleged in B.M.'s DVRO request sufficiently meet the definition of "disturbing the peace" under section 6320. Therefore, the court did not abuse its discretion in finding that the alleged conduct could constitute domestic violence under the DVPA.

B.    *The Court's Findings Were Supported by Substantial Evidence*

D.V. next contends that there was insufficient evidence that her conduct disturbed B.M.'s peace because there was no evidence that B.M. suffered emotional or mental harm. Once again, we disagree with D.V.'s interpretation of the record, and we conclude there was substantial evidence to support the court's finding that D.V. disturbed B.M.'s peace.

D.V. mostly focuses on the lack of testimony at the September 14, 2021 hearing regarding whether the events affected B.M. emotionally or mentally. By doing so, however, D.V. ignores the declaration B.M. submitted under penalty of perjury with the August 3, 2021, DVRO request. There, B.M. claimed he was "in fear for [G.M.'s] safety as [D.V.] was living in a drug rehabilitation center who is now aiding and abetting her absconding our son." Later, while describing D.V.'s abduction and threats to permanently keep G.M. away from him, B.M. reiterated that he "fear[s] for [his] son's life."

12

D.V.'s counsel did not ask B.M. any questions at the hearing to challenge his claimed emotional or mental state.

The statements in B.M.'s declaration provide substantial evidence that D.V. destroyed his emotional or mental calm. The trial court has discretion to issue a protective order under the DVPA "simply on the basis of an affidavit showing past abuse." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334, 337.) The "DVPA does not impose a heightened standard for specificity, nor does it contain any corroboration requirement." (*F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 118.) Notably, B.M.'s declaration was filed the day after the abduction incident and while G.M. was still out of B.M.'s custody. If anything, the declaration may be a better reflection of how D.V.'s conduct affected B.M.'s contemporaneous mental and emotional state than what he may or not have said at a hearing roughly one and a half months later.

D.V.'s other factual arguments are unpersuasive. For instance, she points out that B.M. was not physically present when she took G.M. from the kindergarten. But this is not a requirement under the DVPA. Section 6320 makes clear that abusive conduct may be committed "indirectly" and "by any method or through any means." (§ 6320, subd. (c).) We see no reason why B.M. would feel any less disturbed, not to mention helpless, to hear that his son was abducted after the fact. She also highlights B.M.'s testimony that he suspected D.V. had "likely" taken G.M. to the rehabilitation center where she was staying, though she does not explain the import of this fact. Even if we could infer from B.M.'s suspicion of G.M.'s whereabouts that B.M. was not emotionally or mentally disturbed, the trial court drew other, reasonable inferences from the evidence. We cannot reweigh the evidence or resolve

13

evidentiary conflicts, and we may not substitute our own judgment for that of the trial court. (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1145.)

Further, D.V. argues that the court applied the wrong legal standard in considering the evidence. She criticizes the court's use of the term "unsettling" instead of language found in section 6320 stating the conduct must "destroy the mental or emotional calm of the other party." We understand the term "unsettling" to be synonymous; to "unsettle" means "to perturb or agitate mentally or emotionally." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 1372, col. 2.) In any case, the court otherwise described the conduct as "disturbing the peace" of B.M., which certainly suffices under the statute.

D.V. also attempts to distinguish her conduct from the conduct found to be abusive in *Nadkarni*, *supra*, 173 Cal.App.4th 1483 and two of its progeny cases; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140 and *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416. She argues that these cases show that the DVPA is designed to address "systematic and calculating" conduct, whereas she "did not engage in a concerted and deliberate course of action." However, "concerted and deliberate" conduct is not required, as the DVPA's definition of "abuse" includes "reckless" conduct. (§ 6203, subd. (a).) Moreover, the Legislature intended that the DVPA be "broadly construed" to accomplish its purposes. (*Nadkarni*, at p. 1498.) We therefore decline to limit the DVPA's scope as D.V. suggests.

Finally, D.V. contends there was no evidence to show that her conduct was objectively unreasonable under the circumstances, because there was "considerable confusion as to the existing orders in place at the time of the alleged abuse." We recognize that custody of G.M. changed hands several times over the course of multiple different proceedings. Nevertheless, the

14

evidence at the September 14, 2021 hearing showed that D.V. was receiving regular supervised visitations during the two months prior to August 2, 2021 abduction. D.V. never claimed to have custody during those months, nor did she ever try to go to G.M.'s school to pick him up prior to that incident. There is no reason to believe that D.V. was confused about the existing orders in place when she removed G.M. from the B.M.'s mother's car on August 2, 2021.

Based on the foregoing, there was sufficient evidence in support of the trial court decision to issue the DVRO against D.V. on September 14, 2021. Therefore, we conclude the trial court did not abuse its discretion.

## IV.    DISPOSITION

The order is affirmed. No costs are awarded. (Cal. Rules of Court, rule 8.278(a)(5).)

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.

15